176 P.2d 190

**M. R. PRESTRIDGE LUMBER CO. v. EM-
PLOYMENT SECURITY COM-
MISSION.**

No. 4890.

Supreme Court of New Mexico.

Sept. 30, 1946.

Rehearing Denied Jan. 30, 1947.

Wilson, Brophy & Whitehouse, of Albuquerque, for appellant.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellees.

SADLER, Chief Justice.

The petitioner before the District Court of Bernalillo County, the appellant here, complains of a judgment rendered against it, or them (if we think separately of the partners composing the firm), by said court in certiorari proceedings instituted by petitioner to review the action of the respondent, the appellee, in fixing the rate

of contribution to be paid by the petitioner for the years 1942 and 1943 to Employment Security Commission of New Mexico under the Unemployment Compensation Law. Article 8, 1941 Comp. (L.1936, Sp. Sess., c. 1, as amended). Certiorari was applied for under 1941 Comp. § 57-806(i), and Supreme Court Rule, § 19-101(81) (c), adopted pursuant thereto. Hereinafter, the respondent, in the interest of brevity, will be referred to as simply "the Commission."

As the matter proceeded before the Commission, both the 1942 and the 1943 rates of contribution, as fixed by it, were reviewed and redetermined in an agreed consolidation for all purposes of the two applications for such redetermination filed by the petitioner before the Commission. Following a somewhat lengthy hearing, the Commission made findings of fact as follows:

"1. In 1932 M. R. Prestridge and Carl Seligman formed a partnership composed of themselves as partners, with the firm name and style of 'B. M. C. Logging Company', the principal business of which was contract logging in the vicinity of Grants, New Mexico. In 1933, by oral agreement subsequently embodied in written articles of partnership dated November 1, 1937, the firm name and style of the partnership was changed to 'Prestridge and Seligman', under which name M. R. Prestridge and Carl Seligman continued to conduct a business substantially of the same character in the same vicinity until about June 1941. The partnership of M. R. Prestridge and Carl Seligman, operating under the name of Prestridge and Seligman, was with respect to the year 1936 and each calendar year thereafter an employer subject to the contributions imposed by the Unemployment Compensation Law of New Mexico and filed reports and paid contributions.

"2. In the year 1939, while operations continued at Grants, 'Prestridge and Seligman' under contract with the George E. Breece Lumber Company went to Otero County, New Mexico, and started logging and sawmill operations by which they cut timber and sawed the same into rough lumber. and hauled the rough lumber to the Breece Mill at Alamogordo. This operation continued under the name of 'Prestridge and Seligman' until about June of 1941. During the last three months of this operation, the lumber was delivered to the mill of the Southwest Lumber Company at Alamogordo.

"3. On March 15, 1940, in order to expand their lumber manufacturing operations, M. R. Prestridge and Carl Seligman executed articles of partnership under which they became the partners under the firm name of 'M. R. Prestridge Lumber Company.' This firm purchased the lumber mill and acquired timber rights of the

George E. Breece Lumber Company at Alamogordo and on or about February 1, 1941, commenced repairing and renovating the mill for active operation, completing this repair and renovation about June 1, 1941.

"4. On or about June 1, 1941 operations under the name of 'Prestridge and Seligman' were discontinued in Otero County, all subsequent operations down to the present being conducted as the 'M. R. Prestridge Lumber Company.'

"5. On or about June 1, 1941, M. R. Prestridge and Carl Seligman, as a partnership of Prestridge and Seligman, wound up the business at Grants, New Mexico, and also under the contract with the Breece Lumber Company in Otero County as stated above, and at that time the equipment owned by 'Prestridge and Seligman' was taken over for the operations of the partnership known as M. R. Prestridge Lumber Company and the employees of the former were transferred to the new operations. The business of 'M. R. Prestridge Lumber Company' continued to be the same as that formerly conducted by 'Prestridge and Seligman' in Otero County except that rough lumber was now processed into finished lumber in the mill at Alamogordo.

"6. The two enterprises, one conducted at Alamogordo as 'M. R. Prestridge Lumber Company' and the other conducted at Grants and Alamogordo as 'Prestridge and Seligman,' had the same partners, and for a period of two or three months in the year 1941 both conducted business at the same time, and in the main 'M. R. Prestridge Lumber Company' thereafter carried on the business formerly conducted by 'Prestridge and Seligman' in Otero County with the exception that they also finished lumber in the mill at Alamogordo as aforesaid.

"7. The enterprise known as the M. R. Prestridge Lumber Company is still being conducted in Otero County, New Mexico, which includes the cutting and felling of timber and the operation of a modern sawmill at Alamogordo, New Mexico.

"8. A contribution account for 'Prestridge and Seligman' for liability commencing in 1936 was registered and maintained in that name by the Commission, and reports and contributions were made into that account for their operations at Grants and also, for the last two calendar quarters of 1940, for their operations at Alamogordo in Otero County. As of January 1, 1941, as a result of inquiry by the Commission as to the change of location and at the request of the employer, a separate contribution account was established in the name of 'Prestridge and Seligman,' and reports and contributions for their operations at Alamogordo were made into this account beginning January 1, 1941. Reports and contributions continued to be made during

most of 1941 into the earlier account also. At no time during 1941, or before or afterward until this controversy had arisen, was any application made for registration of an account in the name of the 'M. R. Prestridge Lumber Company,' nor was any notice filed of any change in ownership or organization or legal identity of the employing unit carrying on any of the operations at either place. Shortly after the new operations under the firm name and style of the M. R. Prestridge Lumber Company had commenced, wages for some employment on behalf of 'Prestridge and Seligman' were reported together and on the same report and into the same account as wages for employment on behalf of the new enterprise conducted as the M. R. Prestridge Lumber Company. Thereafter all of the wages for employment in the latter enterprise were reported on report forms of the Commission addressed to and in the name of 'Prestridge and Seligman,' at Alamogordo, the reports being filed and the contributions being paid into this account, the second of the two which the Commission had established for 'Prestridge and Seligman.' This continued until after the beginning of this controversy with respect to the fixing of rates. Arrangements were made with the Commission by Carl Seligman, at one and the same time in 1942, for the payment or the allowance of additional time, in the case of certain contributions due and delinquent with respect to operations of both 'Prestridge and Seligman' and operations at Alamogordo conducted as the M. R. Prestridge Lumber Company. The contributions due on the last report for the 'Grants job' were paid by check of the 'M. R. Prestridge Lumber Company,' the check also including contributions for the 'Alamogordo job.'

"9. For the purpose of rate determination, there never was at any time but one employing unit, the various partnership articles merely evidencing the agreement of the parties at various times.

"10. If the two partnership agreements, the first creating the firm Prestridge and Seligman and the second the firm of M. R. Prestridge Lumber Company, are to be construed as creating separate and distinct legal entities, then when the first was closed out, a merger or consolidation or other form of reorganization was effected and the second partnership was, for the purposes of rate determination, at least the successor to the first, in view of the fact that: Immediately after the merger or consolidation or other form of reorganization, the successor was controlled by the same interests as the predecessor; immediately after such change the successor assumed liability for the contributions due by the predecessor under the Unemployment Compensation Law; and after the reorganization was completed, none of the

'Prestridge and Seligman' enterprises were continued except such as were carried on by the 'M. R. Prestridge Lumber Company' as successor. The consideration of such two partnerships as a single employing unit for the purpose of determining the contribution rate under the Unemployment Compensation Law would not be inequitable.

"11. The contribution rate for 1942 was determined by the fact that the total benefits chargeable against the two accounts maintained for the operation of 'Prestridge and Seligman' and those of 'M. R. Prestridge Lumber Company,' for all periods occurring on or before the computation date of December 31, 1941, (including benefits paid on or before the last day of the month immediately succeeding such computation date, with respect to weeks of unemployment beginning on or before such computation date), exceeded the total contributions paid by the two partnerships for the same period (including contributions paid on or before the last day of the month immediately succeeding such computation date with respect to wages for employment paid by them on or before such computation date).

"12. The contribution rate for the year 1943 was determined by the fact that the total benefits chargeable against the two accounts maintained for the operations of 'Prestridge and Seligman' and those of 'M. R. Prestridge Lumber Company,' for all periods occurring on or before the computation date of June 30, 1942, (including benefits paid on or before the last day of the month immediately succeeding such computation date, with respect to weeks of unemployment beginning on or before such computation date), exceeded the total contributions paid by the two partnerships for the same period (including contributions paid on or before the last day of the month immediately succeeding such computation date with respect to wages for employment paid by them on or before such computation date)."

The findings of the Commission were followed by an opinion and an order, incorporated in the same document, reading as follows:

"While M. R. Prestridge and Carl Seligman might and did form a partnership which became an employing unit, we believe that the three firms identified by the names 'B. M. C. Logging Company', 'Prestridge and Seligman', and 'The M. R. Prestridge Lumber Company', in each of which M. R. Prestridge and Carl Seligman were associated together, were not three separate and distinct partnerships in the sense of separate legal entities. They were rather a single partnership operating under different names. The Commission is of the view that a partnership is not a separate and distinct legal entity recognized by the law. A partnership is no more than the in-

dividuals composing it and therefore when the same, individuals enter into different articles of partnership and use different partnership names, they are in reality the same individuals conducting business. We believe this to be true as a general principle of law, but even more that it is borne out as the principle applicable to this case by reason of the facts in evidence. As between the 'B. M. C. Logging Company' and 'Prestridge and Seligman', testimony on behalf of the employer admitted their single identity and that the articles of partnership establishing 'Prestridge and Seligman' merely amended the previous articles to effect a change in the name of the partnership. Further, in view of all the evidence, including the terms of the various articles of partnership, the conduct and attitude of the partners and their agents and employees throughout the periods in which changes were made in the articles of partnership, and the operation of enterprises of similar or related characters by the partnership throughout, with some of the same equipment and employees, it seems impossible to say that the 'M. R. Prestridge Lumber Company' was a new entity, separate and distinct from 'Prestridge and Seligman' or that it was a new and distinct employing unit. The principles of law and the facts in the case irrefutably establish the proposition that the association together of M. R. Prestridge and Carl Seligman as partners, under whatever name or agreement, was at all times a single employing unit, whose entire experience in the payment of contributions and the benefits to be charged to its account must determine its rate of contribution.

"But if the Commission is wrong in this conclusion, and the true principle be that the articles of partnership creating 'The M. R. Prestridge Lumber Company' effected a change in legal identity and form, then the same result with respect to determining its rate of contribution follows by reason of the provisions of paragraph (6) of Section 57-807(c) of the Unemployment Compensation Law. There was a reorganization by which 'The M. R. Prestridge Lumber Company' became the successor to 'Prestridge and Seligman', as the instrument by which M. R. Prestridge and Carl Seligman continued to pursue a livelihood in their chosen field of logging and lumbering. The facts are present meeting conditions (a), (b), (c) and (d) of paragraph (6). With respect to condition (d), as to the equity or inequity of treating the predecessor and successor as a single employing unit, counsel for the employer argued that the employment experience of 'The M. R. Prestridge Lumber Company' would be better than was that of 'Prestridge and Seligman'. This proposition is hardly susceptible of proof. In any case, other principles throw more light on whether there would be inequity here. These principles

are (1) that control and management of employment policies is the prime factor in the employment experience, rather than the nature of the business conducted, weather conditions, state of the market for the product, etc., and (2) that the determination and fixing of a contribution rate cannot be made in anticipation of the employer's future experience, but can only be the result of his past experience, or why otherwise would the statute require that, to be eligible for rate adjustment, an employer must have had three years' of contribution and benefit experience. Upon these principles, there is nothing inequitable in treating 'Prestridge and Seligman' and 'The M. R. Prestridge Lumber Company' as a single unit for rate determination.

### "Order

"Based upon the foregoing findings of fact and opinion, it is therefore ordered and determined: That the employer's rate of contribution for the years 1942 and 1943 be and it hereby is fixed at three and six-tenths percentum; and that the applications for redetermination of the rate for each of said years be and they hereby are denied."

An important decision to be made at the very outset is the scope of review to be given an employer upon the removal by certiorari into the district court of a proceeding questioning the Commission's action fixing the rate of contribution. Does a duty rest on the district court to make findings of its own after a review of the evidence? Or, if the evidence is substantial in support of findings made by the Commission, is the district court bound by them? These and questions incidental to them must be answered before we are in a position to determine the disposition of this appeal.

The controlling provisions of the act are to be found in 1941 Comp. §§ 57-806 and 57-807. The former section is concerned with the prosecution of claims for unemployment compensation by an unemployed workman, whereas the latter concerns itself with opposition by an employer to the rate of contribution fixed for him by the Commission and a review thereof by the district court on certiorari.

An employee claiming benefits under Section 57-806 must first present his claim to a deputy who will pass upon its validity, or refer it to an appeal tribunal or to the Commission itself to make its determination. Provision is also made for Appeal Tribunals to hear and decide disputed claims for benefits and for a review by the Commission on the same or additional evidence of any decision by an appeal tribunal. This section (57-806) goes on to provide:

"(h) Appeal to Courts.—Any decision of the commission in the absence of an appeal therefrom as herein provided shall

become final fifteen (15) days after the date of notification or mailing thereof, and judicial review thereof shall be permitted only after any party claiming to be aggrieved thereby has exhausted his remedies before the commission as provided by this act. The commission shall be deemed to be a party to any judicial action involving any such decision, and may be represented in any such judicial action by an attorney employed by the commission, or when requested by the commission, by the attorney-general or any district attorney.

"(i) Court Review.—The decision of the commission upon any disputed matter decided by it may be reviewed both upon the law and the facts by the district court of the county wherein the person seeking the review resides upon certiorari. For the purpose of such review the commission shall return on such certiorari the reports and all of the evidence heard by it on any such parts and all the papers and documents in its files affecting the matters and things involved in such certiorari. The district court shall render its judgment after hearing and either the commission or any other party thereto affected may appeal from such judgment to the Supreme Court of the state in accordance with the rules now or hereafter established by the Supreme Court. Such certiorari shall not be granted unless the same be applied for within fifteen (15) days from the date of the decision of the commission. Such certiorari shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under the Workmen's Compensation Law (§§ 57-901—57-931) of this state. It shall not be necessary in any proceedings before the commission to enter exceptions to the rulings of the commission and no bond shall be required in obtaining certiorari from the district court as hereinabove provided but such certiorari shall be granted as a matter of right to the party applying therefor. A petition for a writ of certiorari shall not act as a supersedeas or a stay of the order of the commission unless the court or the commission shall so order. (Laws 1936 (S.S.), ch. 1, § 6, p. 1.)"

Section 57-807 deals with contributions. It provides for them from the employer equal to 2.7 per cent. of wages paid by him during each calendar year thereafter, with respect to employment occurring after June 30, 1941, except as prescribed in the next succeeding subsection (c) which makes future rates conform to benefit experience. Later subparagraphs of this section prescribe the means for determining the rate of contribution to be paid by the employer, while subparagraph 9 of Section 57-807 provides for protests by the employer before the Commission and for a judicial review of its action by the district court. It reads:

"(9) The commission shall promptly notify each employer of his rate of contributions as determined for any calendar year pursuant to this section. Such notification shall include the amount determined as the employer's average annual pay roll, the total of all of his contributions paid on his own behalf and credited to his account for all past years, and the total benefits charged to his account for all such years. Such determination shall become conclusive and binding upon the employer unless, within thirty (30) days after the mailing of notice thereof to his last known address or in the absence of mailing, within thirty (30) days after the delivery of such notice, the employer files an application for review and redetermination, setting forth his reasons therefor. If the commission grants such review, the employer shall be promptly notified thereof and shall be granted an opportunity for a fair hearing, but no employer shall have standing, in any proceeding involving his rate of contributions or contribution liability, to contest the chargeability to his account of any benefits paid in accordance with a determination, redetermination, or decision pursuant to section 6 (§ 57-806) of this act, except upon the ground that the services on the basis of which such benefits were found to be chargeable did not constitute services performed in employment for him and only in the event that he was not a party to such determination, redetermination, or decision or to any other proceedings under this act in which the character of such services was determined. The employer shall be promptly notified of the commission's denial of his application, or of the commission's redetermination, both of which shall become final unless within fifteen (15) days after the mailing of notice thereof to his last known address or in the absence of mailing, within fifteen (15) days after the delivery of such notice, a petition for judicial review is filed in the district court of the county in which he resides."

So far as our examination of the act discloses, the only other reference to a review in the district court will be found in Section 57-815(b), reading:

"Civil actions brought under this section to collect contributions or interest thereon from an employer shall be heard by the court at the earliest possible date and shall be entitled to preference under the calendar of the court over all other civil actions except petitions for *judicial review* under this act and cases arising under the Workmen's Compensation Law of this state." (Emphasis ours.)

It will be noted that by the terms of section 57-806(i) appeals to the Supreme Court were authorized in accordance with rules then or thereafter established by such court. Subsequently, and acting under its rule making power, the Supreme Court

adopted a rule governing proceedings on certiorari in the district court to review any decision of the Commission on claims for benefits under above mentioned Section 57-806, in which an appeal in such matters from the district court to the Supreme Court was authorized in accordance with existing rules for appeals from interlocutory orders or decrees. The whole procedure governing certiorari proceedings to review action of the Commission in the district court was set out (1941 Comp. § 19-101(81) (c), being practically identical with the procedure governing certiorari in the district court to review decisions of the State Corporation Commission fixing the amount of franchise tax to be paid by domestic and foreign corporations, pursuant to L.1935, c. 116, as shown by a reference to same in § 19-101(81) (c). Among other things, the rule provides:

"(4) The district court shall try and determine such cause upon the evidence legally introduced at the hearing before said employment security commission presented by the parties to said court. After hearing said cause the court shall make findings of fact and conclusions of law and enter judgment therein upon the merits."

The question naturally arises whether the specific directions in relation to certiorari in the district court and appeals from its judgments to the Supreme Court of decisions awarding or denying benefits to the *employee,* found in Section 57-806, apply and govern the judicial review of decisions by the Commission fixing the *employer's* rate of contribution as authorized by Section 57-807(c) (9). Unless they do then we find a paucity of instruction or direction in the statute touching the matter that is difficult to explain.

While, as disclosed by a reading of governing provisions in Section 57-806(h, i), much particularity is indulged as to the review of decisions touching benefits—a review "both upon the law and the facts" being directed—except to make final the action of the Commission unless within 15 days after notice thereof "a petition for judicial review is filed in the district court of the county in which he (the employer) resides," the statute is strangely silent as to the nature of the review authorized, its scope, whether a record before the Commission is to be made up and, if so, whether the same is to go up by certiorari, by appeal, or otherwise. Furthermore, if an appeal to the Supreme Court is contemplated in matters relating to the rate of contribution, the statute says nothing about it.

We can only conclude it to have been the legislative intent that the provisions of Section 57-806, more especially sub-paragraphs f to i, both inclusive, dealing with procedure, review on certiorari in the district court and authorization of an appeal from that court to the Supreme

Court, should be just as applicable to decisions fixing the employer's rate of contribution as to the employee's claim for benefits; that when the legislature in section 57-807(c) (9) authorized a "judicial review" in the district court of the Commission's decision fixing the employer's rate of contribution, it contemplated exactly the same kind of "review" as that provided in the immediately preceding section of the decision rendered on an employee's claim for benefits, brought into the district court by certiorari—and with the same right of a review of the district court's judgment on appeal to the Supreme Court as that authorized in the case of the judgment in a claim for benefits. To hold otherwise would be to convict the legislature of a futile act and of a gross sense of injustice.

So viewing the matter, what, then, was the duty of the trial judge under the statute granting a complaining party the right to have the decision of the Commission "reviewed both upon the law and the facts by the district court of the county wherein the person seeking the review resides upon certiorari"? The governing District Court Rule, 1941 Comp., § 19-101(81) (c), in sub-section 4 thereof confines the trial judge upon such review to the "evidence legally introduced at the hearing before said employment security commission presented by the parties to (the) court."

In Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640, 643, we dealt with a statute somewhat similar to the one here involved, although having basic differences. In commenting on it we took note that "no provision is made on appeal for a trial de novo." But, see, State v. Romero, 49 N.M. 129, 158 P.2d 851. This statement is singularly true of the statute under consideration in the granting of a "judicial review" of the Commission's decision in the district court on certiorari. This is especially so when we construe the statute in the light of the District Court Rule, supra, prescribed by us to govern such proceedings directing that the district court shall try and determine the cause on the evidence legally introduced before the Commission.

In the Chiordi case, we spoke concerning the nature of the hearing in the district court under the statute construed, as follows:

"The proceedings before the Chief of Division, while quasi judicial, were essentially administrative. The questions before the district court and here, are questions of law. They are, Whether he acted fraudulently, arbitrarily or capriciously in making his order, and, Whether such order was supported by substantial evidence, and generally, Whether the Chief of Division acted within the scope of the authority conferred by the liquor control act."

In answer to the query hereinabove propounded, we conclude it was the duty of the trial court in conducting the certiorari proceeding authorized by the statute to review the evidence presented to it from the hearing before the Commission and to make its own findings of fact and from them draw the proper conclusions of law. In formulating District Court Rule 19-101(81) (c), we so ordered in sub-section 4 thereof and no reasons have been presented which convince us we were in error in so prescribing.

It is earnestly urged upon us by the Commission that the district court is bound by the findings of the Commission if supported by substantial evidence and the language of our opinion in Chiordi v. Jernigan, supra (see also State v. Romero, 49 N.M. 129, 158 P.2d 851, following same), lends itself to this view until we take note of the differences between the two statutes. In that case, while a trial de novo as ordinarily understood was not authorized, the statute itself prescribed by indirection, at least, that the findings of the Chief of Division of the Board of Liquor Control should be binding on appeal to the district court, if sustained by substantial evidence. Section 1705(a) of Chapter 236, New Mexico Session Laws of 1939, provided that on appeal to the district court any finding "which is not sustained by, * * * substantial, competent, relevant and credible evidence," should be set aside and held void. Even under the statute just mentioned the District Judge for good cause shown may receive evidence in such proceedings in addition to that appearing in the record of hearing for the purpose of determining whether the evidence relied upon in support of the findings or order of the Chief of Division has been overcome by such additional evidence. This procedure in itself involves fact finding by the district court.

Not only do we have no such direction as to findings of the Commission on certiorari to the district court but contrarily a statutory declaration that "any disputed matter decided by it (the Commission) *may be reviewed* both upon the law *and the facts* by the district court" (§ 57-806(i) followed by District Court Rule 19-101(81) (c) directing th- district court, after hearing, to make findings of fact. We take this to mean the district court shall make its own findings of fact, after a review of the evidence. It does not mean, necessarily, that the district court must ignore the findings of the Commission. It may give them some weight and should follow the Commission's findings in making its own, save where the evidence clearly preponderates against them. Cf. Tietzel v. Southwestern Construction Co., 43 N.M. 435, 94 P.2d 972, 126 A.L.R. 307, reviewing holding in Early Times Distillery Co. v.

Zieger, 11 N.M. 182, 66 P. 532. In the last analysis, however, the responsibility of making correct findings rests with the district court and it is not to be hampered or embarrassed in the performance of this duty by the findings of the Commission.

In the proceedings before the district court the petitioner requested findings of fact which the court declined to adopt. It then called upon the court to make its own findings of fact and conclusions of law before entering judgment. The court refused this request. The position of the parties will be clearly delineated by the following excerpts from the record, the first by the Commission's attorney, to-wit:

"If the Court please, the respondent takes the position that if this is a judicial review before this Court that such judicial review is limited to the question of whether or not the findings of fact made by the Commission are supported by substantial evidence and whether or not the correct rulings of law were applied by the Commission; that this Court has no power to make findings of fact or conclusions of law in this proceeding because that would be doing the same thing that the legislature has delegated to the Commission."

The foregoing statement by the attorney for the Commission is followed immediately by this declaration of the trial judge, to-wit:

"I will sustain the position of the respondent that it is not proper for the Court to make findings of fact and conclusions of law in this matter and that the Court hereby refuses to make such findings and conclusions, and that the marginal notations on petitioner's requested findings of fact and conclusions of law are not to be taken as the Court having ruled individually upon each finding of fact and conclusion of law, but the Court has refused to consider any of said findings because of the position heretofore stated that it does not believe it is a proper case for findings or conclusions to be made by the Court."

It follows from what has been said that the trial court erred in declining to make findings of fact as required by the statute and by the governing rules. This conclusion renders untimely and unnecessary the decision of several other questions presented and argued in the briefs of the parties.

The judgment will be reversed and the cause remanded to the District Court of Bernalillo County with a direction that said Court find the facts, draw conclusions of law therefrom and render judgment in conformity therewith.

It is so ordered.

BICKLEY, BRICE, LUJAN, and HUDSPETH, JJ., concur.