(No. 33775.—

DANTE COTTINI *et al.,* Appellees, *vs.* ROY F. CUMMINS, Director of Labor, *et al.*—(CHICAGO THRIFT ETCHING CORPORATION, Appellant.)

*Opinion filed March 22, 1956.*

FYFFE AND CLARKE, of Chicago, (JOHN HARRINGTON, of counsel,) for appellant.

COTTON, FRUCHTMAN & WATT, of Chicago, (EUGENE COTTON, and HELEN HART JONES, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This case presents the question of the eligibility of certain employees of Chicago Thrift Etching Corporation for benefits under the Unemployment Compensation Act. A deputy of the Division of Unemployment Compensation found them ineligible, and on appeal the Director of Labor affirmed this determination after a hearing at which evidence was introduced before his representative. In a proceeding instituted by the employees under the Administrative Review Act, the circuit court of Cook County reversed the ruling of the Director, and the company appeals.

The company manufactures metal name plates. During the period here in question it employed about 192 persons in its manufacturing and maintenance operations, in addition to foremen and office personnel. Of the production

and maintenance workers, 172 were members of Basic Processors Union, A.F.L. About 20 employees were engaged in various phases of the lithographing processes used in making name plates. For a number of years these lithographers, including the 13 plaintiffs in this case, had been recognized as a separate collective bargaining unit, represented by Amalgamated Lithographers of America, C.I.O. Each union bargained separately for the employees it represented. They had never negotiated jointly with the company.

The contract of the Basic Processors Union with the company was to expire on April 2, 1953. Negotiations looking toward a new agreement took place during March, but they were unsuccessful. On April 1, 1953, the union called a strike and established pickets at the company entrances. The strike lasted until May 13, 1953. During the strike the 13 plaintiffs and the other members of the Lithographers' Union did not work, and their claim for unemployment compensation benefits covers that period.

Section 604 of the Unemployment Compensation Act (Ill. Rev. Stat. 1951, chap. 48, par. 434,) provides: "An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided, that this Section shall not apply if it is shown that (A) he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (B) he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute;  *  *  *."

The Director found that a work stoppage existed be-

cause of the strike of the Basic Processors Union, which was a labor dispute, and that the plaintiffs were not interested in that dispute and did not finance it, directly or indirectly. These findings are not challenged, nor is it disputed that the picketing by the Basic Processors Union was entirely peaceable and orderly. The Director also found, however, that the plaintiffs and the other members of the Amalgamated Lithographers Union participated in the labor dispute which caused the stoppage, and were therefore ineligible for benefits under the statute. This finding is sharply disputed.

The lithographers, like the members of the Basic Processors Union, did not report for work while the strike was in progress. They assert, however, that their conduct was caused by their belief that the company did not want them to come to work, and so did not constitute participation in the dispute. This belief is attributed to certain characteristics of the company's work and to certain conduct on the part of company officials.

The lithographic department is responsible for imprinting on the metal the printed material which appears on the finished name plate. Before the raw material in the form of sheets of metal is brought to the lithographic department it is first washed, cleaned or degreased. After the lithographic process has been completed, asphalt powder must be applied in preparation for etching. The powder must be applied within two or three days after the lithographic process has been completed or the printed product will become worthless and it will be necessary to begin the entire process over again. The lithographic work and the work which preceded and followed it were thus a part of a continuous process. One of the claimants who had been an employee for thirty years testified that he knew of no time when the company laid off processors and let the lithographers continue to work.

Although the company knew that there was to be a

strike for at least a week before it occurred, no representative of the company indicated to the foreman, the shop delegate or any of the lithographers that they wanted them to come to work in the event of a strike by the processors. And although representatives of the company saw a group of the lithographers across the street from the plant during every day of the strike, they did not tell them that the company wanted them to report to work. Upon this evidence it is argued that the plaintiffs were justified in assuming that the company did not want them to work during the strike.

Under the statute, one whose unemployment is due to a work stoppage caused by a labor dispute is ineligible for unemployment benefits unless he establishes that he falls within both of the statutory exceptions. (*Shell Oil Co.* v. *Cummins,* 7 Ill.2d 329; *Brown Shoe Co.* v. *Gordon,* 405 Ill. 384.) In our opinion the plaintiffs have failed to establish nonparticipation in the strike. Our decisions in *Outboard, Marine & Mfg. Co.* v. *Gordon,* 403 Ill. 523, and *Shell Oil Co.* v. *Cummins,* 7 Ill.2d 329, show that a failure to report to work during a strike does not, under all circumstances, amount to participation in the strike. But the justifications present in those cases are absent here. *Cf. American Brake Shoe Co.* v. *Annunzio,* 405 Ill. 44.

It appears from the evidence that before any employees had left the plant on the afternoon before the strike, the company posted a printed notice upon the plant bulletin board which all employees passed in going to the time clocks. This notice was addressed "To All Employees of the Chicago Thrift-Etching Corporation and Members of the Basic Processors Union, Local No. 44 AFL." It stated that the Basic Processors Union had called a strike on April 1 because the company would not meet its wage demands. After reciting the background of the strike from the company's point of view, it went on: "Despite the strike called by the Union beginning tomorrow, this plant will

remain open for any employee who desires to work, whether or not that employee belongs to the Union. We are assured that the Chicago Police Department will protect any employee who desires to work."

Two of the plaintiffs testified. The first had not seen the notice; the second was not asked about it. We need not in this case consider whether the plaintiffs would be bound by a notice posted in the usual place even though they did not see it, for the record here is consistent with the possibility that all but one of the plaintiffs read the notice. The record also shows that the washing and degreasing which precede the lithographic work was normally done by three people, and that the process of applying the asphalt powder which followed the lithographic work was normally the work of two men. There were twelve foremen available to do this work during the strike. There are other circumstances which similarly suggest that the plaintiffs' conduct was not attributable to their asserted belief that the company did not want them to work. It is unnecessary to detail them, however, because it does not appear that the plaintiffs were unaware of the company's expressed desire. They can not, of course, rely on their unilateral determination as to the company's wishes in the face of an expression to the contrary.

The judgment of the circuit court of Cook County is reversed and the decision of the Director is confirmed.

*Judgment reversed; decision confirmed.*