389 P.2d 855

**R. L. WILSON, Robert E. Croom and Lloyd F. Grinslade, Petitioners-Appellees,**

**v.**

**EMPLOYMENT SECURITY COMMISSION of New Mexico, and Kennecott Copper Corporation, Chino Mines Division, Respondents-Appellants.**

**No. 6962.**

Supreme Court of New Mexico.

April 29, 1963.

Rehearing Denied March 10, 1964.

Smith, Kiker & Kitts, Richard E. Ransom, Albuquerque, for appellee Grinslade.

Foy & Vesely, Silver City, for appellee Wilson.

Gilbert, White & Gilbert, Santa Fe, J. Wayne Woodbury, Silver City, for appellee Croom.

A. M. Frazier, Albuquerque, for Employment Security Commission.

Poole & Poole, Albuquerque, Shantz & Dickson, Silver City, for Kennecott Copper Corp.

NOBLE, Justice.

Employment Security Commission (hereafter called the Commission) and Kennecott Copper Corporation (hereafter called Kennecott) have appealed from three judgments of the district court of Grant County reversing decisions of the Commission which had denied unemployment benefits to 525 claimants who were or had been employees of Kennecott. The claims were grouped by the unions of which the claimants were members, were removed for review to the district court by three writs of certiorari and consolidated there for hearing. The appeals from the three judgments of the district court are consolidated in this court into a single appeal.

The claims for unemployment compensation arose by reason of a dispute between International Union of Mine-Mill and Smelter Workers (hereafter called Mine-Mill) and Kennecott, which resulted in a work stoppage at Kennecott because of a strike commenced by Mine-Mill at the morning shift on August 7, 1959. The claims were denied by the Commission upon the ground that claimants were disqualified for benefits by virtue of § 59-9-5(d), N.M.S.A.1953.

Upon review of the Commission's decisions, the district court found that the Commission's findings of fact, conclusions of law and decisions in Cause No. 15220 were "contrary to the weight of evidence, unwarranted and unsupported by the evidence." The court then made its own independent findings of fact and conclusions of law and entered its judgment reversing those of the Commission.

The procedure for review of decisions of the Commission is governed by § 59-9-6(h) and (i), N.M.S.A.1953, the pertinent portion of which reads:

"The decision of the commission upon any disputed matter decided by it may be reviewed both upon the law and the facts by the district court of the county wherein the person seeking the review resides upon certiorari."

and by rule 81(c) (4) (§ 21-1-1(81) (c) (4)):

"The district court shall try and determine such cause upon the evidence legally introduced at the hearing before said employment security commission presented by the parties to said court. After hearing said cause the court shall make findings of fact and conclusions of law and enter judgment therein upon the merits."

The parties, however, are in disagreement as to the scope of review by the district court, announced in Prestridge Lumber Co.

v. Employment Security Commission, 50 N. M. 309, 176 P.2d 190. After discussing both the statute and the rules, this court there said:

> " * * * We take this [the statute and rule] to mean the district court shall make its own findings of fact, after a review of the evidence. It does not mean, necessarily, that the district court must ignore the findings of the Commission. It may give them some weight and should follow the Commission's findings in making its own, save where the evidence clearly preponderates against them * * * [citing cases]. In the last analysis, however, the responsibility of making correct findings rests with the district court and it is not to be hampered or embarrassed in the performance of this duty by the findings of the Commission."

It is Kennecott's position that the district court is required to adopt the Commission's findings as its own unless such findings do not have substantial support in the evidence. Appellees, on the contrary, find in the language of Prestridge authority for the district court to entirely disregard the Commission's findings and to make its own based upon the legal evidence from the record. Appellants assert that by our later decisions in Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449, and Yarbrough v. Montoya, 54 N.M. 91, 214 P.2d 769, we held that a review of an administrative decision is constitution-ally limited to whether the decision is arbitrary and capricious and supported by substantial evidence. We do not construe our decisions as limiting the quantum of the evidence reviewed to meet constitutional requirements. Each of those decisions construed different statutes and is to be limited to the particular statute being considered. Furthermore, in each of them, we were chiefly concerned with whether new or additional evidence might be accepted on review and in each case we were additionally concerned with a review of the discretionary action of an administrative officer. The review of a decision of the Employment Security Commission more nearly resembles that from the State Corporation Commission, but there are dissimilarities which make our decision in Transcontinental Bus System, Inc. v. State Corporation Commission, 56 N.M. 158, 241 P.2d 829, not controlling. The district court, in reviewing an Unemployment Security Commission decision unlike that from the Corporation Commission, is governed by specific rules adopted and promulgated by this court.

■ It is true that the majority of both State and Federal courts have adopted the substantial evidence rule for review of administrative agency decisions, 4 Davis, Administrative Law, § 29.01, and we have adopted that view in construing the review provisions applicable to other administrative agencies. Continental Oil Co. v. Oil Conservation Commission, 70 N.M. 310, 373

P.2d 809. The statute, § 59–9–6(h) and (i), N.M.S.A.1953, and rule 81(c) (4) requires the district court to review a challenged decision of the Employment Security Commission to determine whether it is lawful. In so determining, the reviewing court must determine whether the Commission's findings of fact are supported by substantial evidence. The trial court shall adopt as its own such of the Commission's findings of fact as it determines to be supported by substantial evidence and shall make such conclusions of law and decision as lawfully follow therefrom. If the district court determines that the legal evidence before the Commission fails to substantially support such findings or decision, then the district court shall make its own findings of fact, conclusions of law and decision based only upon the legal evidence before the Commission. If Prestridge conflicts with what we have said, then it is modified to conform herewith.

█ Much confusion has arisen in reviewing decisions of an inferior court or tribunal as to what is meant by the term "substantial evidence." It means more than merely any evidence and more than a scintilla of evidence and contemplates such relevant legal evidence as a reasonable person might accept as sufficient to support a conclusion. McCague v. New York C. & St. L. R. Co., 225 Ind. 83, 71 N.E.2d 569, 73 N.E.2d 48; Offutt v. World's Columbian

Exposition Co., 175 Ill. 472, 474, 51 N.E. 651, 652; State v. Gregory, 339 Mo. 133, 96 S.W.2d 47. This court has said that evidence is substantial if reasonable men all agree, or if they may fairly differ, as to whether it established such fact. Marchbanks v. McCullough, 47 N.M. 13, 132 P.2d 426; Brown v. Cobb, 53 N.M. 169, 204 P.2d 264. Substantial evidence may also be stated as in James v. Bailey Reynolds Chandelier Co., 325 Mo. 1054, 30 S.W.2d 118, 123:

"Whether the evidence in a given case is sufficient to support the finding of the jury, when taken and considered in the fashion in which it must be on demurrer, depends on whether it is sufficient to establish with reasonable certainty in the minds of persons of ordinary and average intelligence the existence of the facts on which the finding is necessarily based."

█ In any event, the district court in this case determined that the Commission's findings, conclusions and decisions were unsupported by substantial evidence. The Commission based its denial of benefits to the claimants upon a finding that they were disqualified to receive unemployment benefits under the provisions of § 59–9–5(d), N.M.S.A.1953, the pertinent portions of which provide:

"59-9-5. *Disqualification for benefits.*—An individual shall be disqualified for benefits— .

\*    \*    \*    \*    \*    \*

(d) For any week with respect to which the commission finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; Provided, that this subsection shall not apply if it is shown to the satisfaction of the commission that—

(1) He is not participating in or directly interested in the labor dispute which caused the stoppage of work; and

(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or directly interested in the dispute;  \*  \*  \*."

It is, of course, not questioned but that the stoppage of work, resulting in claimants' unemployment, was caused by a labor dispute, nor that the statute casts the burden upon the claimant to escape the disqualification by showing their eligibility under both (1) and (2) above. 28 A.L.R.2d 287, 331; Haggart, Unemployment Compensation During Labor Disputes, 37 Neb.L. Rev. 668, 680.

■    Appellants first urge that by failing to cross picket lines, claimants either voluntarily left work without good cause or participated in the Mine-Mill labor dispute, and are ineligible to receive unemployment benefits.

Kennecott employed some 1500 persons, more than half of whom were represented by Mine-Mill, which called the strike. On August 6, 1959, Mine-Mill notified Kennecott it would strike its Chino plant at the morning shift change on August 10. Kennecott immediately commenced shutting down and securing its plant, machinery and equipment, and by the morning of August 7 had completely ceased operations except for some necessary work in connection with closing the plant. Mine-Mill commenced massive picketing in the morning of August 7, but this was reduced to a few pickets at all entrances after an injunction against massive picketing was obtained by Kennecott.

Our first question, therefore, is whether there was work available for the claimants at Kennecott during the strike. It is not disputed that, contrary to its policy in previous labor disputes, Kennecott did not advertise nor advise its non-striking employees of the availability of work during the strike. Kennecott's position regarding the availability of work is illustrated by its

only public statement, which appeared in the September, 1959 issue of Kennecott's publication, "Chinorama," in the form of a question and answer:

"Q. Is work available to any employee who wants to work during the strike?

"A. If an employee wants to work during the strike, he may report to his regular foreman in the plant or at the mine and he will be told whether work is available for him."

There was testimony that some work could have been made available but no testimony has been pointed out that it actually was made available or that any employees were advised of the availability of work during the strike. The company's position was further testified to by its general manager, in answer to a question as to why the availability of work, if there was any, was not advertised as had formerly been done:

"A. We didn't think it was necessary. If we'd made a general statement like that, and suppose now— which is contrary to what I believe—suppose a bunch of men had come back right then, what would we have done with them, until we were able to sort out the different jobs and called them properly. Had they come up, we wouldn't know what they can do and we know what work we have available and we could assign it. We have to be fairly careful we don't have some fellow put on a Mine-Mill job, or however we may do it, because we would be in the soup from then on."

Sec. 59-9-4, N.M.S.A.1953, requires a claimant for unemployment compensation to register for work, at an employment office at such times as the Commission shall prescribe by rule. § 59-9-5(c) expressly defines the grounds of disqualification for failure to actively seek work as required by § 59-9-4(c) in the following language:

"(c) * * * that he has failed without good cause either to apply for available, suitable work when so directed by the employment office or the commission or to accept suitable work when offered him."

It appears uncontradicted that employees of the Commission inquired of Kennecott officers whether work was available and were told that such decision must come from Kennecott's general offices; that such representatives would be advised of such decision, but were never told that any work would be or had been made available. There does not appear any evidence that the appropriate employment offices had any report of any such work available. There is, likewise, testimony that those employees and

union representatives who inquired were told they would be advised later whether there would be work, but were not so advised. It appears to us that there is no substantial support in the evidence of work having been made available at Kennecott during the strike, or that the claimants were ever advised of any available work, nor is there evidence that either an employment office or the Commission directed any claimant to apply at any place for available, suitable work.

It appears clear to us that Kennecott officials were merely seeking to get the non-striking employees to cross picket lines and come into the plant. It was their position that until they did so they would not advise such employees whether or not there was available work. This is further borne out by appellants' strong contention that mere failure to cross the picket lines to ascertain whether work was available amounted to either failure to actively seek work, or to participation in the Mine-Mill labor dispute, and disqualified them from unemployment benefits. Lloyd E. Mitchell Inc. v. Maryland Employment Security Board, 209 Md. 237, 121 A.2d 198; Cottini v. Cummins, 8 Ill.2d 150, 133 N.E.2d 263; Brown v. Maryland Unemployment Compensation Board, 189 Md. 233, 55 A.2d 696; Meyer v. Industrial Commission of Missouri, 240 Mo.App. 1022, 223 S.W.2d 835; Baker v. Powhatan Mining Co., 146 Ohio St. 600, 67 N.E.2d 714; Matson Terminals, Inc. v. California Employment Commission, 24 Cal.2d 695, 151 P.2d 202; and Andreas v. Bates, 14 Wash. 2d 322, 128 P.2d 300, relied upon by appellants, are distinguishable. Without reviewing each decision in detail, it appears that in each case the claimants had knowledge of the availability of work, but, for one reason or another, refused to cross the picket line.

It is not enough that some work might have been made available to a few if they had crossed the picket line. We have not been cited any decision holding it to be the duty of the claimant to cross the picket line merely to ascertain whether work is available to him, nor that a failure to so cross under such circumstances disqualifies a claimant for unemployment benefits. This would seem to be particularly true when it was known that operations had been completely shut down and all equipment secured and, under circumstances where the company, during prior labor disputes, had clearly advised the non-striking employees of the particular work that was available to them.

While we think the decisions generally agree that one who voluntarily refuses to cross a picket line to go to his work which is available to him participates in the labor dispute, it is equally well recognized that one who has reason to fear violence or bodily harm is not required to pass a picket line, nor it is necessary that a claimant, to

be eligible for unemployment benefits, actually experience violence or bodily harm in an attempt to cross a picket line. A reasonable fear of harm or violence is sufficient. Shell Oil Co. v. Cummins, 7 Ill.2d 329, 131 N.E.2d 64; Outboard Marine & Mfg. Co., Johnson Motors Division v. Gordon, 403 Ill. 523, 87 N.E.2d 610; Lanyon v. Administrator, Unemployment Compensation Act, 139 Conn. 20, 89 A.2d 558; Meyer v. Industrial Commission of Missouri, supra. Additionally, such fear may arise from the potential for violence, as well as from the violence itself. Shell Oil Co. v. Cummins, supra.

In view of the history of violence in former labor disputes in Grant County, and the refusal on at least one occasion during this strike to permit supervisory personnel to enter the premises; some threats of violence and a return to mass picketing on the one occasion, requiring disciplinary action by the court, we cannot say that a finding by the court of fear on the part of claimants is unsupported by the evidence, nor that the Commission's findings to the contrary were so supported.

This does not appear to be the ordinary circumstance where the courts will presume that strikers are law abiding and that no violence would occur if non-striking employees crossed the picket lines to perform their usual work. Nor was this a case where the mere presence of pickets was used as an excuse for not reporting to work

as in Brown v. Maryland Unemployment Compensation Board, supra. By so acting, upon the facts here present, we think claimants neither voluntarily left work without good cause nor participated in this dispute.

Under the statute, one whose unemployment is due to a stoppage of work caused by a labor dispute is ineligible for unemployment benefits unless he establishes that he falls within both of the statutory escape exceptions. Shell Oil Co. v. Cummins, supra; Brown Shoe Co. v. Gordon, 405 Ill. 384, 91 N.E.2d 381; Cottini v. Cummins, supra. Appellants assert that § 59-9-5, N. M.S.A.1953, does not confine disqualification to those employees who participated in or financed a labor dispute, nor even to those for whom work was available but who failed to cross a picket line to perform it. They cite a number of decisions of other jurisdictions defining the term "directly interested in the labor dispute" to include one whose wages, hours, or conditions or work will be affected favorably or adversely by the outcome of the labor dispute. This, they say, is the prevailing view. However, the authorities are not uniform in the definition. 28 A.L.R.2d 287, 337. We are not directly concerned, in this case, with a proper definition of the term, because, as we view it, the decision must turn upon the question of what caused the work stoppage.

It is plain to us, and, we think, not denied, that claimants' unemployment, at

least in the first instance, was due to a labor dispute between Mine-Mill and Kennecott resulting from a grievance over the suspension of a Mine-Mill member. That was the cause of the strike called and effective August 7. It is equally plain to us that such labor dispute was not one in which claimants were "directly interested." The Commission and the district court entertain directly contrary views as to the effect of the evidence. The Commission determined that while the labor dispute began as a grievance matter, it was continued after August 10 as a labor contract dispute. The finding of the district court as to the reason for continuance of the labor dispute is to the contrary.

It is contended that because the contracts of all unions at Chino expired on the same date, with similar provisions for carry-over, pending negotiations; that prior to their expiration dates all unions at Chino commenced negotiations for new contracts; that in the past Kennecott has granted all unions the same terms as the most favorable one negotiated; that in April, 1959, all unions except International Association of Machinists submitted identical proposals for changes in the health and welfare program; and, that after commencement of the strike and to the time of the Commission's decision, contract negotiations became sporadic or desultory; and, because on August 6, 1959, the president of Mine-Mill had notified the general manager of the western division of Kennecott that all of its locals had been advised to strike on August 10, it follows that the cause of the work stoppage after August 10 was the economic dispute over labor contract terms. We do not agree. The evidence is clear that after commencement of the strike on August 7, Mine-Mill offered to go back to work if the disputed suspension was lifted. Kennecott refused. It is argued that such grievance disputes seldom last more than 24 hours. It appears from testimony of the Kennecott negotiator that this grievance dispute had not been disposed of even at the date of the Commission hearing. Findings may not rest upon speculation or conjecture. Petrakis v. Krasnow, 54 N.M. 39, 213 P.2d 220; Southern Union Gas Co. v. Cantrell, 56 N.M. 184, 241 P.2d 1209.

This case more nearly resembles that in Martineau v. Director of Division of Employment Sec., 329 Mass. 44, 106 N.E.2d 420, where the court subscribed to what it referred to as the majority rule, denying benefits to one who would benefit from the labor dispute. It was there held that upon the record before the court, it could not be said, as the board concluded, that the claimant would derive any benefit from the strike. It appeared that the strike was "over terms and conditions of a renewal contract." The Massachusetts court said the board would have been justified in finding claimant "directly interested" if the dispute involved wages, hours, or working conditions, but

that while it was not only possible but probable that the dispute there did involve such issues, there was no proper proof in the record of that fact. Since it is conceded that the strike, in the instant case, was called by reason of a grievance dispute over the suspension of a Mine-Mill member, in which claimants were not "directly interested," we cannot say that the district court erred in determining the Commission's findings to be without substantial support in the evidence. There was, therefore, an insufficient basis for disqualifying the claimants under § 59–9–5(d) (1), N.M.S.A.1953.

■ The Commission applied "integral functioning" as one of the basic tests of grade or class under the New Mexico Unemployment Compensation Act. The integration test has been rejected in construing the meaning of "establishment." Tennessee Coal, Iron & R. Co. v. Martin, 251 Ala. 153, 36 So.2d 547, and in Park v. Appeal Board of Michigan Employment Security Commission, 355 Mich. 103, 94 N.W.2d 407, 420, which overruled "integral functioning" as the basic test of the extent of "the establishment" in the Michigan Employment Security Act as applied in Chrysler Corporation v. Smith, 297 Mich. 438, 298 N.W. 87, 135 A.L.R. 900. Its rejection is equally valid as a basic test of the extent of grade or class.

■ This court is clearly committed to a liberal interpretation of our unemployment compensation act, so as to provide sustenance to those who are unemployed through no fault of their own and who are willing and ready to work if given the opportunity. Graham v. Miera, 59 N.M. 379, 383, 285 P.2d 493; Parsons v. Employment Security Comm., 71 N.M. 405, 379 P.2d 57.

■ In view of our construction, we do not believe that an award of compensation benefits under these circumstances would do violence to the public policy of this state. Shell Oil Co. v. Cummins, supra. We agree with Queener v. Magnet Mills, 179 Tenn. 416, 167 S.W.2d 1, that "grade or class" means an organized group, or at least a cohesive group, acting in concert, where the striking member acts with the sanction of his associates, in their behalf.

It appears clear to us that unlike the situation in Johnson v. Pratt, 200 S.C. 315, 20 S.E.2d 865, and Members of Iron Workers' Union of Provo v. Industrial Commission, 104 Utah 242, 139 P.2d 208, the claimants here were not represented by the striking Mine-Mill as a single bargaining agency, nor are Huiet v. Boyd, 64 Ga.App. 564, 13 S.E.2d 863; In re Steelman, 219 N.C. 306, 13 S.E.2d 544; or Abshier v. Review Board of Indiana Employment Sec. Div., 122 Ind. App. 425, 105 N.E.2d 902, persuasive, since in those cases it appears that the existence of grades or classes within the meaning of the statute was assumed.

We conclude that the Commission's findings that claimants were members of the same grade or class as the striking Mine-Mill employees by reason of integral functioning, are erroneous as a matter of law and were correctly vacated by the district court. Acting under Rule 81(c) (4), the district court then properly made its own findings and conclusions and, under such circumstances, it becomes our function to review the district court's findings and conclusions. We have done so and conclude they are substantially supported by the evidence and are lawful.

The judgments of the district court, appealed from, will be affirmed. It is so Ordered.

COMPTON, C. J., and CHAVEZ, J., concur.

CARMODY and MOISE, JJ., dissenting.

MOISE, Justice (dissenting).

The opinion of the majority, while announcing the correct rules of law applicable for reviewing proceedings of administrative agencies, disregards these rules completely in deciding the case and, in doing so, arrives at an erroneous conclusion. It will be my purpose to demonstrate that this is true.

It is stated that in reviewing decisions of the Unemployment Compensation Commission, such of the commission's findings of fact as are supported by substantial evidence shall be adopted by the court which shall then make conclusions of law which legally follow therefrom. With this statement there can be little quarrel. It is the same rule of review approved by us in Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449; Yarbrough v. Montoya, 54 N.M. 91, 214 P.2d 769; Heine v. Reynolds, 69 N.M. 398, 367 P.2d 708; Continental Oil Company v. Oil Conservation Commission, 70 N.M. 310, 373 P.2d 809; and most recently restated in Kelley v. Carlsbad Irrigation Dist., 71 N.M. 464, 379 P.2d 763. I see nothing in § 21–1–1 (81) (c), N.M.S.A.1953, requiring a different review from that approved for other administrative agencies, and specifically agree with the statement of the majority that anything said in M. R. Prestridge Lumber Co. v. Employment Security Commission, 50 N.M. 309, 176 P.2d 190, which might be considered in conflict, should be now set aright.

The majority, after their discussion of the scope of review, proceed to consider the actions of the district court in making its own findings of fact, the same being, in the main, contrary to and conflicting with those made by the commission. The majority state that the district court "determined that

the Commission's findings, conclusions and decisions were unsupported by substantial evidence." Only in the case involving employees who were members of the Brotherhood of Railroad Trainmen is this true. However, I do not assert that it was necessary that such a determination be made. By its findings which conflict with those made by the commission, I assume the court was necessarily concluding that there was an absence of substantial support for the findings of the commission. This being true, the evidence before the commission must be reviewed. It is in the performance of this task that the majority fall into error. It is clear from their opinion that they have reviewed the evidence with a view to determining if the findings of the trial court are supported thereby; whereas, the proper approach is to determine if the commission's findings were supported by the evidence.

The distinction is not a purely academic one. Its importance is apparent when consideration is given to conflicting evidence which would support findings favoring either side of the dispute. It is the fact finder's duty—in the instant case, the Commission—to resolve the conflicts. When this has been done, substantial evidence being present, the findings are not to be overturned by the district court. This is the rule that binds us on appeal in reviewing facts as found by the trial court, Montano v. Saav-

edra, 70 N.M. 332, 373 P.2d 824, and is the rule by which the trial court is bound in reviewing findings of the commission. See Johnson v. Sanchez and the other cases discussing scope of review, cited supra. It follows that on appeal from the district court, we must determine if the trial court has applied the correct rule of review.

I direct attention to three separate occasions in the opinion where the majority have not followed the rules governing review as announced by them.

The majority state that they "cannot say that a finding by the court of fear on the part of claimants is unsupported by the evidence, nor that the commission's findings to the contrary were so supported." The true question, as already pointed out, is, was the commission's finding supported by substantial evidence, not was the finding of the trial court so supported.

Again, it is stated that certain findings of the commission were "erroneous as a matter of law, and were correctly vacated by the district court." Further, that "the district court then properly made its own findings and conclusions * * *" and that it is now our function to review the findings and conclusions of the district court to see if they are substantially supported.

It is difficult for me to understand the statement that certain findings are errone-

ous as a matter of law. Findings as made may be unsupported by substantial evidence, but how can they be erroneous as a matter of law? I repeat that the court has completely disregarded the rule announced by it, and that the proper determination should have been whether or not the commission's findings were so supported.

On still another occasion, in discussing the question of "interest" of appellees, the following language is used: " * * * we cannot say the district court erred in determining the Commission's findings to be without substantial support in the evidence." As already noted, the district court did not so determine except as to the members of the Brotherhood of Railroad Trainmen. The correct rule of review is here again being disregarded.

It seems to me that it is significant that nowhere in the opinion do the majority directly find an absence of substantial evidence to support any particular finding of the commission.

Even where they state that there was no substantial evidence of work being made available at Kennecott, or that appellees were so advised, or that the employment office had directed any claimant to available work, it should be noted that the commission had made no such findings, nor were

they necessary to support the decision of the commission. Compare Cottini v. Cummins, 8 Ill.2d 150, 133 N.E.2d 263.

I cannot agree that the review of the evidence made by the majority in their discussion concerning certain aspects of the case is a fair statement of the facts which would support the findings of the commission. Instead, it is a statement of the facts best calculated to support the contrary view of the district court.

It would serve no useful purpose for me to discuss the numerous cases from other jurisdictions interpreting and applying the law in comparable situations. Suffice it to say, that when the findings of the commission are based upon substantial evidence, and support a conclusion that the employees have failed to show that they are not disqualified because they come within the exceptions of § 59–9–5(d), N.M.S.A.1953, such conclusion should be affirmed. Shell Oil Co. v. Cummins, 7 Ill.2d 329, 131 N.E.2d 64.

It is clear that the burden is on the employee to establish that he is not disqualified for benefits under § 59–9–5(d), N.M.S.A. 1953. Appeals by Employees of Polson Lumber & Shingle Mills, 19 Wash.2d 467, 143 P.2d 316; Copen v. Hix, 130 W.Va. 343, 43 S.E.2d 382. While recognizing the rule,

**18**

neither the district court nor the majority apply it. The majority would seem to find support for their position in the provision of § 59–9–5(c), N.M.S.A.1953. In so doing, they completely ignore or lose sight of the provisions of § 59–9–5(d), N.M.S.A.1953, and its proper application as discussed above.

From my examination of the proceedings before the commission, I am satisfied that its findings are substantially supported, and its conclusions properly follow. It is not a question of liberal or strict interpretation or application of the statute. That the law is to be liberally construed is not open to question. Graham v. Miera, 59 N.M. 379, 285 P. 2d 492; Parsons v. Employment Security Commission, 71 N.M. 405, 379 P.2d 57. However, I do not see in the decision of the commission any failure to apply the statute properly.

Having concluded that the findings of the commission had substantial support in the evidence, it follows that the trial court should have sustained them. Further, these findings supported the conclusions reached by the commission. It is my considered judgment that the trial court having reversed the commission should, in turn, be reversed. I respectfully dissent from the contrary conclusion reached by the majority.

CARMODY, J., concurs.