555 P.2d 696

**Zelma M. MITCHELL, Plaintiff-Appellee,**

v.

**LOVINGTON GOOD SAMARITAN CENTER, INC., Defendant-Appellant.**

**No. 10847.**

Supreme Court of New Mexico.

Oct. 27, 1976.

Heidel, Samberson, Gallini & Williams, Jerry L. Williams, Lovington, for defendant-appellant.

Gary J. Martone, J. Richard Baumgartner, Joseph Goldberg, Albuquerque, for plaintiff-appellee.

## OPINION

SOSA, Justice.

This case presents the issue of whether petitioner's actions constituted misconduct so as to disqualify her from certain unemployment compensation benefits.

On June 4, 1974, petitioner-appellee Zelma Mitchell was terminated for certain acts of alleged misconduct from the Lovington Good Samaritan Center, Inc. [hereinafter Center], respondent-appellant. On June 12, 1974, Mrs. Mitchell applied for unemployment compensation benefits. Finding that Mrs. Mitchell's acts constituted misconduct, a deputy of the Unemployment Security Commission [hereinafter Commission] disqualified Mrs. Mitchell from seven weeks of benefits pursuant to § 59–9–6(B), N.M.S.A.1953. On July 24, 1974, Mrs. Mitchell filed an appeal pursuant to § 59–9–6(C), N.M.S.A.1953. The referee of the Appeal Tribunal reversed the deputy's decision and reinstated these benefits to Mrs. Mitchell on August 28, 1974. On September 13, 1974, the Center appealed the decision of the Appeal Tribunal to the whole Commission pursuant to § 59–9–6(E), N.M.S.A.1953. The Commission overruled the Appeal Tribunal and reinstated the seven week disqualification period. Mrs. Mitchell then applied for and was granted certiorari from the decision of the Commission to the District Court of Bernalillo County pursuant to § 59–9–6(K), N.M.S.A.1953. On January 16, 1976, the District Court reversed the Commission's decision and ordered it to reinstate the benefits to Mrs. Mitchell. From the judgment of the District Court, the Center appeals.

The issue before us is whether Mrs. Mitchell's actions constituted misconduct under § 59–9–5(b), N.M.S.A.1953. Mrs.

Mitchell started work at the Center in Lovington on July 4, 1972 as a nurse's aide. After approximately one year on the job in addition to her normal duties she also served as a relief medications nurse two days per week. On June 4, 1974, she was terminated. The testimony concerning the events leading up to her termination that day is somewhat contradictory but basically is the following. Mrs. Mitchell arrived punctually to work at three p. m. The director of the Center, Mr. Smith, questioned her about why she was already filling in her time card. Mrs. Mitchell answered that she filled in eight hours, which she would work that day as long as she did not "break a leg or die." Mr. Smith replied, "Well, I'm not so sure about that." Mrs. Mitchell then became defensive and stated that she had supported him and prayed for him when the Director of Nurses, Mrs. Mary Stroope, sought to have him fired or replaced as director. Mrs. Stroope, in the vicinity, overheard this comment, denied it, and called Mrs. Mitchell a liar. At various times during this exchange Mrs. Mitchell referred to Mr. Smith, Mrs. Stroope, and others as "birdbrains." This occurred in a crowded area where the Center's employees were checking in and out, so Mr. Smith told both to go into his office. There, Mrs. Stroope apologized to Mrs. Mitchell for calling her a liar and Mrs. Mitchell apologized for saying that Mrs. Stroope had circulated a petition to replace Mr. Smith. They then discussed the proposition of giving Mrs. Mitchell another chance by putting her on two weeks' probation. However, tempers soon flared again and Mr. Smith resolved to fire Mrs. Mitchell because she was "calling one of us a birdbrain against another birdbrain" and she "can't work with us, successfully, for two weeks." Mrs. Mitchell then demanded her check. Mr. Smith paid her for that day, a week's vacation, and another week's salary for being terminated, which he was not required to do since Mrs. Mitchell failed to give him two weeks' notice.

Appellee Mitchell argues that the events of June 4, 1974, do not constitute misconduct within the meaning of § 59–9–5(b), supra. Appellant Center argues that these events were the last of a series of acts of misconduct, and the "birdbrain" incident should be considered the "last straw" resulting in her termination. Mitchell counters that the prior acts of misconduct should not be considered and were in the final analysis *ex post facto* justifications for her termination.

The alleged acts of prior misconduct are the following. On April 2, 1974, Mrs. Mitchell went to work at the Center out of uniform [she wore gold pants rather than navy blue]. On that day the Federal Regulation Inspectors and Medical Review Team of New Mexico visited the Center. Mrs. Mitchell stated that she did not know that the federal inspectors would be there that particular day. The Director of Nurses reprimanded her and told her to go home and to change into the proper attire, which Mrs. Mitchell refused to do, mainly because another nurse was wearing black pants, which Mrs. Mitchell considered to be equally improper. The Director of Nurses explained to her that black was as appropriate as navy blue. The following day Mrs. Mitchell again came to work out of uniform but this time she was directed to go and did go home to change.

On May 24, 1974, Mrs. Mitchell was switched from medications to the floor routine. Angered, Mrs. Mitchell refused to give medications, even though the charge nurse and Mrs. Stroope explained to her that the reason for the switch was that she was familiar with both jobs whereas the replacement nurse, Carol Skurlock, was unfamiliar with the floor routine. Mrs. Mitchell stated that she did not like being replaced by a "white" nurse's aide (Carol Skurlock). Mrs. Mitchell considered herself and Carol to be just "birdbrain against birdbrain," apparently because neither she nor Carol was a licensed nurse. From May 24 to June 4 Mrs.

Mitchell refused to perform her duties as a relief medications aide.

On May 15, 1974, and other days, Mrs. Mitchell sang while counting medications and was not very co-operative, which caused Betty Clarke, R.N., to complain that Mrs. Mitchell's actions were unethical and time-consuming.

The term "misconduct" is not defined in the Unemployment Compensation Law [§ 59–9–1 to –29, N.M.S.A.1953]. The Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941) examined the misconduct subsection of its unemployment compensation act, found no statutory definition of misconduct, and formulated the following definition:

. . . "misconduct" . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

See *Rowe v. Hansen*, 41 Cal.App.3d 512, 116 Cal.Rptr. 16 (1974); *Silva v. Nelson*, 31 Cal.App.3d 136, 106 Cal.Rptr. 908 (1973); *Maywood Glass Co. v. Stewart*, 170 Cal.App.2d 719, 339 P.2d 947 (1959); 26 A.L.R.3d 1333 (1969). We adopt this definition.

Applying this definition of misconduct to the facts of the case before us, we hold that Mrs. Mitchell's acts constituted mis-

conduct. Mrs. Mitchell's insubordination, improper attire, name calling, and other conduct evinced a wilful disregard of the interests of the Center. Although each separate incident may not have been sufficient in itself to constitute misconduct, taken in totality Mrs. Mitchell's conduct deviated sufficiently to classify it as misconduct under the above test. Appellee's argument that the "last straw" doctrine should not be used is hereby rejected. See *Ammons v. Zia Company,* 448 F.2d 117 (10th Cir. 1971); *Giddens v. Appeal Board of Michigan Emp. Sec. Com'n,* 4 Mich.App. 526, 145 N.W.2d 294 (1966); cf. *Rowe v. Hansen,* supra.

The district court is reversed and the decision of the Commission is reinstated.

McMANUS and EASLEY, JJ., concur.