689 P.2d 286

**Mary Seeley ALONZO,
Petitioner-Appellant,**

v.

**NEW MEXICO EMPLOYMENT SECUR-
ITY DEPARTMENT and Baldridge
Lumber Company, Respondents-Appel-
lees.**

**No. 14942.**

Supreme Court of New Mexico.

Oct. 12, 1984.

Chris Coppin, Albuquerque, for petition-
er-appellant.

Richard Baumgartner, Albuquerque, for
respondents-appellees.

**OPINION**

SOSA, Senior Justice.

Plaintiff-appellant Mary Seeley Alonzo
(Alonzo) was terminated from her employ-
ment for the alleged misconduct of re-
fusing to wear a smock in compliance with
a company rule. The Employment Security
Department (ESD) denied Alonzo unem-
ployment benefits because she was dis-
charged for misconduct and therefore was
disqualified under NMSA 1978, Section 51–
1–7(B) (Repl.Pamp.1981). Alonzo appealed.
All administrative review boards and the
district court affirmed the decision to re-
fuse benefits. We reverse.

The sole issue before this Court is wheth-
er one incident of refusing to wear a smock
is sufficient "misconduct" to deny benefits
under Section 51–1–7(B).

Alonzo was employed as an office clerk
and bookkeeper at Baldridge Lumber Com-
pany (Baldridge) from August 1979 until
her termination in May 1982. In the last
nine months of her employment she assist-
ed at the cash registers to facilitate cus-
tomer service.

Typically, when Alonzo was called upon
to help the cashiers, she would leave her
desk in the office area of the building, go
to the sales area where the cash registers
were located, check out a few customers
and then return to her desk. It was a
company regulation for cashiers to wear a
company smock. It was not Alonzo's habit
to wear a smock during the short time she
was helping at the cash register. During
the nine-month period prior to the incident
leading to termination, she was never told
to wear a smock.

The first time her supervisor requested
that she wear a smock was the day before
her termination. After he provided a clean
one, she wore it that day. The following
morning she was called to the cash register
more frequently than usual, approximately
eight to ten times before noon, and no one
asked her to wear a smock. According to
Alonzo's testimony, during the noon hour
her supervisor requested she wear a smock
and she refused because of the type of
clothing she was wearing. She was then
discharged for not wearing a smock. At
no time prior to the day of termination was

Alonzo warned that she would be fired if she did not wear a smock.

Although the supervisor testified Alonzo was hired as an office clerk, he indicated her duties included being a cashier. Alonzo testified that she had worked almost two years as a clerk before she was asked to "help out" at the register and it was her impression that she was doing it "as a favor," not as part of her office duties.

The record does not affirmatively demonstrate she was hired to perform a cashier's duties. The record includes exhibits of the job descriptions for (1) "CLERK—GENERAL OFFICE" and (2) "CASHIERS". Additionally, there is a separate exhibit entitled "CASHIER'S POLICY." The clerk's job description, signed by Alonzo, did not require any special clothing, nor did it state that an office clerk would relieve as a cashier. The cashier's job description, also signed by Alonzo, did not state that a smock should be worn.

The initial paragraph of the clerk's job description pertains solely to paperwork, including invoices, ledgers, mark-down cards, reports, "and performing related office tasks." It continues:

The degree of effort should be put forth in the following manner:

1. Assist any customer you come in contact with in a polite and courteous manner.

   \*    \*    \*    \*    \*    \*

4. May have to occasionally perform *related* work in other areas of the store. (Emphasis added.)

Since the only type of duties described in the office clerk's job description are office or paperwork tasks, the "related work" can only refer to paper work and not to cashiering.

The separate "CASHIER'S POLICY" sheet was the only exhibit stating that a smock should be worn, and it was *not signed* by Alonzo. Various other policies of the company not relevant to the smock issue were in evidence and signed by Alonzo.

Testimony from Alonzo's supervisor indicates that she was not required to wear a smock in the office. The supervisor admitted Alonzo had not previously worn a smock and he had not requested her to do so until the day before the incident. Additionally, Alonzo testified that in the nine months she "helped out" she had never worn a smock nor was she asked to wear one.

There was no dispute as to her favorable work record. Alonzo had previously worked for Baldridge and was rehired in 1979. The supervisor testified that she would not have been rehired if her former employment at Baldridge had not been satisfactory. The solitary incident complained of in the record is her one time refusal to wear a smock when requested. Her supervisor testified that the sole reason for her termination was that one incident.

The district court depended on *Mitchell v. Lovington Good Samaritan Center, Inc.*, 89 N.M. 575, 555 P.2d 696, (1976). In that case we adopted a definition for "misconduct" formulated by the Wisconsin Supreme Court:

"[M]isconduct" \* \* \* is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee \* \* \* \* On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Id.* at 577, 555 P.2d at 698 (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259–260, 296 N.W. 636, 640 (1941)).

In *Mitchell*, a nurse's aide committed a "series of acts" and it was the "totality" of the conduct that led to it being labeled "misconduct." *Mitchell*, 89 N.M. at 577, 578, 555 P.2d at 698, 699. The series of acts in *Mitchell* consisted of the following:

1) refusing to perform assigned duties; 2) twice refusing to wear the proper attire for her regular job as a nurse's aide; 3) calling her supervisor and co-worker "birdbrains"; and 4) unethical and time-consuming behavior while on the job.

The *Mitchell* court found these acts evinced a wilful disregard of the interests of the employer and held:

Although each separate incident may not have been sufficient in itself to constitute misconduct, *taken in totality* * * * [it is] misconduct.

*Id.* at 578, 555 P.2d at 699 (emphasis added).

Another state has dealt with this problem and held:

[A] *single isolated incident* in the course of satisfactory performance over a period of years by the employee does not amount to a wilful disregard of the employer's interests or a deliberate violation of the employer's rules.

*Bridges v. Western Electric Co.*, 304 So.2d 850, 852 (La.App.1974) (emphasis added). Where the employer previously tolerated similar acts, a single incident of failing to obey was not considered sufficient to deny benefits. *Boughton v. Division of Unemployment Insurance Department of Labor*, 300 A.2d 25 (Del.Super.1972).

Our courts, in agreement with sister states have recognized examples of behavior sufficient to be regarded as "misconduct" which significantly affects the employer's business. Such conduct includes multiple incidents of disobedience, or a purposeful disregard of safety regulations, or intoxication on the job. *See Donovan v. New Mexico Employment Security Department*, 97 N.M. 293, 639 P.2d 580 (1982) (multiple acts of disturbance and hostility by a bank employee); *Sandoval v. Department of Employment Security*, 96 N.M. 717, 634 P.2d 1269 (1981) (repeated incidences of tardiness and absences without notice); *accord Coleman v. Department of Labor*, 288 A.2d 285 (Del.Super.1972) (being drunk on the job and brandishing a realistic toy gun is wanton behavior not requiring prior warning before termina-

tion); *Jackson v. Doyal*, 198 So.2d 469 (La. App.1967) (disobedience of a safety order.)

**Whole Record Review**

In reviewing the record for substantial evidence to support the ESD Board of Review decision, the district court indicated it utilized the test in *Ribera v. Employment Security Commission*, 92 N.M. 694, 594 P.2d 742 (1979), i.e., that of more than merely any evidence or a scintilla of evidence to support the findings. Since *Ribera*, this Court has adopted "whole record review" of administrative hearings. *Duke City Lumber Co. v. New Mexico Environmental Improvement Board*, 101 N.M. 291, 681 P.2d 717 (1984); *see also Jones v. Employment Services Division*, 95 N.M. 97, 619 P.2d 542 (1980) (Felter, J., dissenting, stating that a whole record review of the agency hearing would have produced a different result on appeal).

Implementing whole record review, we find, under the facts of this case, that Alonzo's conduct of refusal to wear a smock on one occasion was an isolated incident in an otherwise good performance record during almost three years of employment. It does not rise to the *Mitchell* level of wilful or wanton misconduct that would harm her employer's business interests.

We reverse the holdings of the ESD and the district court and remand for further proceedings consistent with this opinion.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.

STOWERS and RIORDAN, JJ., dissent.

STOWERS, Justice, dissenting.

I dissent.

The evidence in this case clearly demonstrates that the appellant (Alonzo) committed an act of insubordination constituting misconduct. A deliberate or willful refusal by an employee to obey a reasonable order or directive which an employer is authorized to give and entitled to have obeyed constitutes insubordination. *See School*

*District No. 8, Pinal County v. Superior Court,* 102 Ariz. 478, 433 P.2d 28 (1967); *Beatty v. Automatic Catering, Inc.,* 165 Colo. 219, 438 P.2d 234 (1968); *Avery v. B & B Rental Toilets,* 97 Idaho 611, 549 P.2d 270 (1976).

Furthermore, a reading of the statute in question, NMSA 1978, Section 51–1–7 (Repl.Pamp.1983), "Disqualification for Benefits" states:

An individual *shall* be disqualified for, and shall not be eligible to receive, benefits:

\* \* \* \* \* \*

B. if it is determined by the department that he has been discharged for misconduct connected with his work or employment. (Emphasis added.)

In view of the uncontroverted evidence that the appellant's misconduct was connected with her employment, the only matter remaining for this Court's consideration is whether there is substantial evidence to support the trial court's decision. There is such substantial evidence as found both by the Employment Security Department and the trial court and as we have said innumerable times, if there is substantial evidence to support the trial decision, it will not be disturbed. *Baca v. Employment Services Division of the Human Services Department,* 98 N.M. 617, 651 P.2d 1261 (1982); *Donovan v. New Mexico Employment Security Department,* 97 N.M. 293, 639 P.2d 580 (1982); *Abernathy v. Employment Security Commission,* 93 N.M. 71, 596 P.2d 514 (1979).