764 P.2d 1316
Billie J. RODMAN,
Petitioner–Appellant,

v.

NEW MEXICO EMPLOYMENT SECURITY DEPARTMENT and Presbyterian Hospital, Respondents–Appellees.

No. 17721.

Supreme Court of New Mexico.

Nov. 30, 1988.

Stowers, J., specially concurred and filed opinion.

Juan A. Gonzalez, Legal Aid Society of Albuquerque, Inc., Albuquerque, for petitioner-appellant.

Connie Reischman, New Mexico Employment Sec. Dept., Albuquerque, for respondents-appellees.

OPINION

RANSOM, Justice.

An administrative decision of the New Mexico Employment Security Department denying unemployment compensation to Billie J. Rodman was reviewed on certiorari by the district court. Rodman now appeals to this Court from the order of the district court affirming the administrative decision.

Rodman had been employed by Presbyterian Hospital as a unit secretary for nearly eight years when, on February 17, 1987, she was terminated under hospital personnel policies following a "third corrective action" notice. Prior restrictions had been placed on Rodman's conduct due to personal problems adversely impacting upon her place of work. At issue is whether the misconduct which warranted termination from employment rose to the level of misconduct which would warrant denial of unemployment compensation under NMSA 1978, Section 51–1–7 of the Unemployment Compensation Law, NMSA 1978, Sections 51–1–1 to 51–1–54 (Repl.Pamp.1987).

Rodman challenges the administrative decision and the district court's review as being unsupported by substantial evidence and contrary to the law. The standard of review is whether the administrative decision was supported by substantial evidence in the whole record. No part of the evidence may be exclusively relied upon if it would be unreasonable to do so. *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 282, 756 P.2d 558, 562 (1988); *Trujillo*

v. *Employment Sec. Dep't,* 105 N.M. 467, 734 P.2d 245 (Ct.App.1987). Additionally, as appellant points out in her brief-in-chief, a reviewing court may correct a misapplication of the law. *Conwell v. City of Albuquerque,* 97 N.M. 136, 138, 637 P.2d 567, 569 (1981).

The Department reasonably summarizes the substantial evidence as follows: Rodman was reprimanded in June of 1986 for receiving an inordinate number of personal telephone calls and visitors at her work station, which was disruptive to her own work and to her co-workers. The formal reprimand set forth conditions to prevent further corrective action. Rodman was to have no personal telephone calls during work hours outside of a designated break or dinner time, in which event they were to occur in an area not visible to patients, physicians, or other department staff. When leaving the department for dinner, Rodman was to report to her immediate supervisor and was not to leave the hospital. Rodman was to make every effort to resolve the matters in her personal life that were causing problems at work.

Nevertheless, according to the testimony of her supervisor, extremely disruptive telephone calls continued. The doctors were beginning to comment on it. The staff was getting more distressed. According to her supervisor, "[A]gain we talked about the visits, the behavior at the desk. When it got pretty bad with the phone calls, Billie would slam charts, push chairs and be a little abrupt with the people she worked with." Another written reprimand in November of 1986 warned Rodman that her job was in jeopardy if the disruptive behavior continued. The supervisor established restrictions prohibiting the claimant from having visitors at the department and instructed her to notify security if there was a potential problem.

On February 15, 1987, Rodman began work at 1:00 o'clock in the afternoon. She had spoken to her boyfriend's mother earlier in the day to tell her that she did not want him to use her car as she had broken off their relationship. The boyfriend's mother called her at work and told her the boyfriend had her car keys. Rodman told the mother to have the boyfriend call her at work. When he did, she informed him that she could not talk to him at her duty station, and he hung up on her. He called her back and left a number where he could be reached. She left the work area and went to the break room to call him.

After returning to her duty station, Rodman got another telephone call from her boyfriend who told her to go downstairs to the lobby to meet him and pick up the keys. When she refused, he told her that if she did not come down he would come up to her department.

Claimant left the department to confront her boyfriend, and, because her supervisor was at lunch in the hospital cafeteria, Rodman notified a co-worker, a registered nurse, that she was leaving. Rodman testified, "I didn't want any kind of confrontation at the desk, so I went downstairs." Before she left her desk, Rodman called the employer's security guard and asked him to meet her in the lobby because she anticipated that a problem could develop.

When Rodman got to the lobby, her boyfriend started yelling and forced her outside. In doing so, he tore her shirt. At this point the security guard arrived and observed them arguing. Rodman was in the passenger seat of her car. The security guard instructed the boyfriend to return the keys, but the boyfriend jumped into the driver's seat, locked the doors and drove off.

About thirty-five minutes later, Rodman returned to her work station, after having changed her torn shirt. She resumed working, but, as the shift progressed, more telephone calls were received for her in the department. The supervisor became frustrated with the volume of calls and the behavior of Rodman. It was determined that Rodman should be sent home. Thereafter she was terminated.

The Appeals Tribunal of the Department of Employment Security found on the basis of the evidence that the appellant had proven unwilling to restrict her personal contacts while at work, as requested by her employer. The hearing officer dismissed as with-

out merit Rodman's contention that she could not stop her acquaintances from calling or visiting her at work. The hearing officer concluded that Ms. Rodman's behavior was unreasonable, had caused many problems for her work section, and constituted misconduct connected with work under Section 51–1–7(B).

*The Meaning of "Misconduct" in New Mexico's Unemployment Compensation Law.* Given the remedial purpose of the Unemployment Compensation Law, New Mexico courts, like most jurisdictions, interpret the provisions of the law liberally, to provide sustenance to those who are unemployed through no fault of their own, and who are willing to work if given the opportunity. *Wilson v. Employment Sec. Comm'n,* 74 N.M. 3, 14, 389 P.2d 855, 862–63 (1963); *Parsons v. Employment Security Comm'n,* 71 N.M. 405, 409, 379 P.2d 57, 60 (1963). Like most states, New Mexico also provides that an employee who is determined to have been discharged for "misconduct" is ineligible for unemployment compensation benefits. § 51–1–7(B); *see generally* Annotation, *Employee's Insubordination as Barring Employment Compensation,* 26 A.L.R.3d 1333 (1969). Two purposes are served by this statutory bar: first, it prevents the dissipation of funds for other workers; second, it denies benefits to those who bring about their own unemployment by conducting themselves with such callousness, and deliberate or wanton misbehavior that they have given up any reasonable expectation of receiving unemployment benefits.

■ Given the remedial purpose of the statute, and the rule of statutory construction that its provisions are to be interpreted liberally, the statutory term "misconduct" should not be given too broad a definition. Accordingly, in adopting the majority definition of the term, this Court wrote in *Mitchell v. Lovington Good Samaritan Center, Inc.,* 89 N.M. 575, 577, 555 P.2d 696, 698 (1976):

> "[M]isconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability * * *. [M]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

Where an employee has not acted with the requisite degree of "fault" under *Mitchell,* he or she has not sacrificed a reasonable expectation in continued financial security such as may be afforded by accrued unemployment compensation benefits. It is therefore possible for an employee to have been properly discharged without having acted with such willful or wanton disregard for an employer's interests as would justify denial of benefits. *See e.g., City of Dallas v. Texas Employment Comm'n,* 626 S.W.2d 549, 551 (Tex.Ct.App. 1981). This Court recognized in *Alonzo v. New Mexico Employment Security Department,* 101 N.M. 770, 689 P.2d 286 (1984), that even an act of willful disobedience which leads to termination will not always rise to the level of "misconduct" when the act is an isolated incident in an otherwise favorable employment history and the incident does not cause a significant disruption of the employer's legitimate interests. *Cf., Trujillo v. Employment Sec. Dep't,* 105 N.M. 467, 472, 734 P.2d 245, 250 (Ct.App.1987) (where employment contract gave employer the right to draft employees to work overtime in emergency situations significantly affecting the employer's interests, it was "misconduct" for appellees to have refused to report for overtime work).

■ *Alonzo* and *Trujillo* demonstrate that there are two components to the concept of misconduct sufficient to justify denial of benefits. One is the notion that the employee has acted with willful or wanton disregard for the employer's interests; the other is that this act significantly infringed on legitimate employer expectations.

■ *Totality of circumstances and the "last straw" doctrine.* Often, the courts have been confronted with a series of minor infractions by the employee, where each incident showed a willful disregard of the employer's interests, but no single incident was serious enough to justify denial of benefits. In such cases, courts have applied a "totality of circumstances" or "last straw" test to determine whether, taken together, this series of incidents constitutes misconduct sufficient to disqualify the claimant from receiving benefits. *Mitchell v. Lovington Good Samaritan Center, Inc.*, 89 N.M. 575, 555 P.2d 696 (1976). *See also Donovan v. New Mexico Employment Sec. Dep't*, 97 N.M. 293, 639 P.2d 580 (1982); *C.F. Industries v. Long*, 364 So.2d 864 (Fla.Dist.Ct.App.1978); *Rolon v. Commonwealth Unemployment Comp. Bd. of Review*, 59 Pa.Commw. 378, 429 A.2d 1256 (1981).

Rodman recognizes the "last straw" doctrine, but contends that the district court erred in applying the rule in this case because her infractions of February 15 were the result of acts of third parties over whom she had no physical or legal control. Appellant contends that she may not be denied unemployment benefits where the "last straw" which led to her termination was not willful or intentional, especially where, under the employer's personnel policy, she could not have been discharged at all before this final incident.

The Department contends that it is immaterial whether the precipitating act was a willful or intentional violation of the employer's rules, where the record indicates that the claimant had a history of previous acts which demonstrate a willful or wanton disregard for the employer's interests, and the employer discharged the employee for the accumulation of events, including the precipitating event. *Fort Myers Pump & Supply v. Florida Dep't of Labor*, 373 So.2d 429 (Fla.Dist.Ct.App.1979). Although *Fort Myers* does offer support for the appellee's position, we believe termination for a series of incidents which, taken together, may constitute "misconduct" is distinguishable from termination for a single incident following one or more correc-

tive action notices. In the latter event, as here, we hold that the "last straw" must demonstrate a willful or wanton disregard for the employer's interests for unemployment benefits to be denied.

■ It should be noted, however, that the "totality of circumstances" is relevant in contexts other than discharge after the accumulation of a series of minor incidents. The "totality of circumstances," such as provided by the employee's past conduct and previous reprimands, may also be used to evaluate whether the employee acted with willful or wanton disregard of the employer's interests on the occasion that precipitated his or her termination. In *American Process Lettering, Inc. v. Commonwealth Unemployment Compensation Board of Review*, 50 Pa.Commw. 272, 275, 412 A.2d 1123, 1126 (1980), the court stated, "Though not a necessary element [to show misconduct], a [previous] warning is relevant in that it reflects the employee's attitude toward his employment * * * and thus adds to the willfulness of the misconduct." (citations omitted). Other relevant circumstances include the worker's knowledge of the employer's expectations, the reasonableness of those expectations, and the presence of any mitigating factors *Goodridge v. Director of Employment Sec.*, 375 Mass. 434, 377 N.E.2d 927 (1978). Mitigating factors in this case include the acts of Rodman's boyfriend, a third party, and Rodman's attempts to conform to her employer's expectations following previous reprimands.

If substantial evidence existed that Rodman's conduct on February 15, considered in light of the totality of circumstances including her previous history of personal phone calls and unauthorized visitors, showed a willful or wanton disregard for her employer's interests, then Rodman's benefits were properly denied.

*The district court's adoption of independent findings and conclusions.* Before deciding whether there was substantial evidence to support denial of Rodman's benefits for misconduct connected with her employment, it is necessary to discuss

whether the district court erred in adopting its own findings and conclusions rather than accepting those of the Department in their entirety.

SCRA 1986, 1–081(C)(4) provides:

The district court shall try and determine such cause upon the evidence legally introduced at the hearing before said board of review of the employment security department presented by the parties to said court. After hearing said cause the court shall make findings of fact and conclusions of law and enter judgment therein upon the merits.

This Court has had occasion in the past to interpret this provision. In an early case, *M.R. Prestridge Lumber Co. v. Employment Security Commission,* 50 N.M. 309, 320–21, 176 P.2d 190, 198 (1946), this Court held that while the district court may properly give some weight to agency findings, "[i]n the last analysis * * * the responsibility of making correct findings rests with the district court and it is not to be hampered or embarrassed in the performance of this duty by the findings of the Commission." *Wilson v. Employment Security Commission,* 74 N.M. 3, 8, 389 P.2d 855, 858 (1963), however, modified the rule from *Prestridge,* and held, "The trial court *shall adopt* as its own such of the Commission's findings of facts as it determines to be supported by substantial evidence and shall make such conclusions of law and decision as lawfully follow therefrom." (emphasis added). *See also Ribera v. Employment Sec. Comm'n,* 92 N.M. 694, 594 P.2d 742 (1979); *Abernathy v. Employment Sec. Comm'n,* 93 N.M. 71, 596 P.2d 514 (1979).

■ Although under the *Wilson* case and its progeny, the court's affirmation of the Appeals Tribunal decision may appear inconsistent with the court's adoption of independent findings, we hold that the trial court's actions in this case were proper. Under *Wilson,* the trial court cannot both decide that the *findings* of the Department are supported by substantial evidence *and* adopt independent findings. Where, however, the court decides that the *result* reached by the Department was correct, but that the Department's specific findings are inadequate or ambiguous due to a misapprehension of the law, the court consistently with SCRA 1986, 1–081(C)(4), may adopt independent findings and conclusions.

■ In this case, the hearing officer misapprehended the standard of "misconduct" as set forth in *Mitchell* and in this opinion. Specifically, the hearing officer defined "misconduct" as denoting "a material breach of the contract of employment *or* conduct reflecting a willful disregard of the employer's best interests." (Emphasis added). The use of the disjunctive "or" was error, as it implies that a breach of the employee's duties sufficient to warrant termination is automatically grounds for denial of benefits. Moreover, the Appeals Tribunal appears to have based its finding of "misconduct" on Rodman's behavior following her first reprimand and leading up to her termination, without specifically addressing whether her conduct of February 15 constituted willful or wanton disregard of her employer's interests. Under these circumstances, it was proper for the district court to make independent findings and conclusions. Accordingly, we examine the record to determine whether there was substantial evidence to support the district court's findings and denial of benefits.

■ The district court ruled that Rodman's behavior prior to February 15 constituted misconduct; that her acts of February 15, considered in light of her previous history, constituted misconduct; and that she was terminated for misconduct. Based on these considerations the court reasoned that the Appeals Tribunal's denial of Rodman's benefits should be affirmed.

Under the analysis of the previous section, the first of these findings cannot alone stand as a sound basis for the court's decision, because it implies that absent consideration of the events of February 15 a basis existed to deny Rodman's claim. However, the finding that Rodman's conduct of February 15, when considered in light of her previous behavior, constituted misconduct sufficient to deny her benefits

stands on a different footing. If supported by substantial evidence, this finding would justify denial of her benefits. Although the evidence in this case is amenable to more than one reasonable interpretation, we conclude that there was a substantial basis for the district court to decide that Rodman's actions on February 15, when considered in light of the restrictions which had been placed upon her and her previous failure to comply with those restrictions, demonstrated a willful disregard for her employer's interests.

Therefore, the decision of the district court is affirmed.

IT IS SO ORDERED.

WALTERS, J., concurs.

STOWERS, J., specially concurs.

STOWERS, Justice (specially concurring).

I do not agree with the majority opinion's statement that "termination for a series of incidents which, taken together, may constitute 'misconduct' is distinguishable from termination for a single incident following one or more corrective action notices." Nor do I agree with the opinion's conclusion that the " 'last straw' must demonstrate a willful or wanton disregard for the employer's interests for unemployment benefits to be denied". In my opinion, that conclusion is incorrect and does not comport with the "totality of circumstances" test we adopted in *Mitchell v. Lovington Good Samaritan Center, Inc.*, 89 N.M. 575, 578, 555 P.2d 696, 699 (1976), and followed in *Donovan v. New Mexico Employment Sec. Dep't*, 97 N.M. 293, 294–95, 639 P.2d 580, 581–82 (1982). Although each separate incident within a series of incidents may not be sufficient in itself to constitute misconduct, taken in totality the conduct may deviate sufficiently to classify it as misconduct. *See Donovan*, 97 N.M. at 295, 639 P.2d at 582. Thus, the "last straw" need not necessarily demonstrate a willful or wanton disregard for the employer's interests if, when taken in combination with the prior incidents, the conduct as a whole demonstrates misconduct as used in

NMSA 1978, Section 51–1–7(B) (Repl.Pamp. 1987) and defined in *Mitchell. Cf. Fort Myers Pump & Supply, Inc. v. Florida Dep't of Labor*, 373 So.2d 429 (Fla.Dist.Ct. App.1979) (since the employee's work record consisted of willful conduct which occurred repeatedly, the precipitating event resulting in the discharge of that employee need not be a willful violation of the employer's rules).