774 P.2d 435

Patricia D. **RANDOLPH**,
Petitioner–Appellant,

v.

**NEW MEXICO EMPLOYMENT SECUR-
ITY DEPARTMENT** and Sweetwater
Printing Company, Respondents–Appel-
lees.

No. 17938.

Supreme Court of New Mexico.

May 23, 1989.

Karen J. Meyers, Legal Aid Soc. of Albuquerque, Inc., Albuquerque, for petitioner-appellant.

Constance Reischman, Albuquerque, for respondent-appellee, NM Employment Sec. Dept.

Sweetwater Printing Co., Albuquerque, pro se.

## OPINION

BACA, Justice.

Petitioner–Appellant, Patricia D. Randolph, appeals from an order of the district court, which affirmed a decision of the New Mexico Employment Security Department (NMESD) Board of Review (Board) to disqualify Randolph from unemployment benefits because she voluntarily quit her work without good cause. Randolph contends that the district court érred in finding that: (1) she was generally paid in a timely manner although she was requested to delay cashing her paycheck on one occasion; (2) she voluntarily participated in some of the Bible study classes conducted at work; (3) she accepted employment knowing that the employer carried her spiritual belief into the work day; and (4) she was not subjected to unsuitable working conditions. Randolph also challenges the conclusions of law of the district court that she voluntarily quit without good cause and that the Board's decision is supported by substantial evidence and in accord with the law. Upon a whole record review of the Board's decision, we reverse.

The record reveals the following facts pertinent to our inquiry. Randolph worked for Sweetwater Printing Company (Sweetwater) as a graphic artist from May 12, 1986, to June 5, 1986, and briefly in 1981. On three occasions during Randolph's employment in 1986, her weekly paychecks, due on Fridays, did not arrive on time. On another occasion, Randolph's employer asked her to delay cashing a paycheck she received on Friday until the following Monday. Randolph often complained to her employer about the late paychecks to no avail. Further, Sweetwater held daily Bible study classes at work. At the time Randolph was hired, she was aware that her employer was a devout Christian of the Pentecostal sect. Randolph contends that the cumulative effect of religious influence in the work environment amounted to religious harassment.

A NMESD claims examiner issued its initial determination, concluding that Randolph voluntarily quit her employment without good cause connected with her work. On appeal, the Appeals Tribunal of the Department of Labor (Appeals Tribunal) found that Randolph had legitimate concerns regarding her working conditions, including the payment of timely wages and the interjection of religion into the work place. Randolph listed untimely receipt of paychecks as one reason for quitting her employment on her application for unem-

ployment benefits. The Board reversed, and the district court affirmed its decision.

■ We note that the NMESD claims examiner also determined that Randolph left her employment with Sweetwater on June 5, 1986, to accept another job; however, we disagree with the dissent that this finding should affect our decision in this case. Under NMSA 1978, Sections 51–1–8(G) and (M) (Repl.1987), the Board's decision is the final NMESD administrative decision from which a writ of certiorari can be taken to the district court. The initial determination of the NMESD claims examiner is not before this court. Indeed, the discussions of the Appeals Tribunal and Board focused solely on whether Randolph quit or was discharged from her employment and whether the receipt of late paychecks and religious harassment constituted good cause to quit. Contrary to the suggestion contained in the dissent, the district court's findings only addressed the issues of late paychecks and religious harassment. In fact, the NMESD did not submit a proposed "other employment" finding to the district court nor did the district court make such a finding. Moreover, the claims officer made his determination solely on the basis of a letter Sweetwater submitted to NMESD. Although Randolph did inform Sweetwater that she would be leaving to take other employment, she testified before the Appeals Tribunal that she had fabricated this story to assuage her pride over criticism by her employer. Finally, no evidence existed at the time of the Appeals Tribunal hearing that Randolph had ever held employment subsequent to quitting her job at Sweetwater.

The scope of judicial review of findings of facts by administrative agencies is the whole record standard of review. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 681 P.2d 717 (1984). In reviewing the whole record, the court determines whether the administrative decision was supported by substantial evidence. *Rodman v. New Mexico Employment Sec. Dep't*, 107 N.M. 758, 764 P.2d 1316 (1988). To make a "substantial

evidence" determination, the court must be satisfied that the evidence demonstrates the reasonableness of the decision. *National Council v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 756 P.2d 558 (1988).

The reviewing court must find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the agency's conclusion. *National Council on Compensation Ins.*, 107 N.M. at 282, 756 P.2d at 562. "No part of the evidence may be exclusively relied upon if it would be unreasonable to do so." *Id.* Furthermore, the court may not accept part of the evidence and disregard other convincing evidence in the whole record. *Duke City*, 101 N.M. at 294, 681 P.2d at 720. To decide if the district court was correct in finding substantial evidence to support the order of the Board, we must independently examine the entire record. *National Council*, 107 N.M. at 282, 756 P.2d at 562.

■ At issue is whether Randolph left her employment voluntarily without good cause in connection with her employment, NMSA 1978, § 51–1–7 A (Repl.1987), disqualifying her from unemployment benefits. Randolph must prove that she was confronted with necessitous circumstances of such magnitude that she had no alternative than to leave her employment. *Ribera v. Employment Sec. Comm'n*, 92 N.M. 694, 594 P.2d 742 (1979). Additionally, the decision to voluntarily terminate employment must be reasonable. *Toland v. Schneider*, 94 Idaho 556, 494 P.2d 154 (1972). Randolph alleges she had good cause to quit her employment because Sweetwater rendered tardy paychecks to her, violating an agreed upon pay schedule between them. Whether a failure to receive timely wages consistently constitutes good cause to voluntarily quit employment is a question of first impression in New Mexico.

Every employer in New Mexico must designate regular paydays as days fixed for the payment of wages. NMSA 1978, § 50–4–2(A). Both Randolph and her employer testified before the hearing of the

Appeals Tribunal that paychecks were due on Fridays. At that hearing, a witness for the employer testified that he did not know whether Randolph received timely wages. He also testified that Sweetwater experienced financial difficulties during Randolph's employment and that people were asked to bear with the company. The employer testified that her records indicated that she paid Randolph on time, excluding the time she told Randolph to delay cashing her check. The employer further testified that she would have to see the check itself to determine if Randolph received late paychecks. For the record, the hearing officer then requested copies of those cancelled paychecks from the employer within five days of the hearing. The cancelled checks showed that three of the four checks paid were dated on the Monday following the Friday payday. This documentary evidence supported the testimony of Randolph before the Appeals Tribunal regarding her receipt of tardy paychecks.

■ When an employer consistently fails to provide paychecks on established paydays to his or her employee, the employee has good cause to voluntarily quit employment. Our research has disclosed few jurisdictions which discuss cases pertinent to this issue. In *Zablow v. Department of Employment Sec.*, 137 Vt. 8, 398 A.2d 305 (1979), an employee, on three or four occasions during employment, received tardy paychecks. The employee tried to resolve this problem without any success. The court concluded that the employee had good cause to leave employment under these circumstances. In *Emgee Eng'g Co. v. Unemployment Compensation Bd. of Review*, 30 Pa.Commw. 290, 373 A.2d 779 (1977), the court found that several instances of tardy payment of wages within a two-month period and employer's refusal to guarantee timely future payment of wages to employees provided employees with cause of a necessitous and compelling nature for leaving employment. The court also noted that cash flow problems of a company do not constitute a sufficient reason for an employer to make tardy wage payments to its employees.

■ NMESD misplaces reliance on *Koman v. Commonwealth, Unemployment Compensation Bd. of Rev.*, 61 Pa. Commw. 604, 435 A.2d 277 (1981), and *Vancheri v. Unemployment Compensation Bd. of Rev.*, 177 Pa.Super. 553, 112 A.2d 433 (1955). In *Koman*, the court concluded that an employee quit employment without a compelling reason following receipt of late paychecks in two isolated incidences once after the employer's office was closed for one week and another time after an error by employer's bookkeeper required a corresponding adjustment of the employee's wages. In *Vancheri*, the court found that an employee, who worked for his employer for two years, did not have good cause to voluntarily quit employment where he refused to heed his employer's request to wait for one paycheck until completion of a construction job, four days later. The case at bar, however, is distinguishable because Sweetwater, following the commencement of Randolph's short employment, immediately rendered three tardy paychecks to Randolph, after three designated paydays had passed. Indeed, the one timely paycheck received on the designated payday could not be cashed promptly.

NMESD further submits that Randolph's complaint of late paychecks is unfounded because she left work Fridays at 4:00 for a weekly doctor's appointment. NMESD did not present this evidence at the hearing of the Appeals Tribunal. NMESD attempted to introduce this new evidence in a letter of appeal written by the employer to the Board as part of its written argument before the Board. Randolph objected to the consideration of this new evidence in a written response, asserting that such statements should be struck from the record or found to be irrelevant in consideration of the appeal.

The Board of Review must conduct its hearings in a manner affording due process rights to the parties including the right to cross-examine witnesses, offer rebuttal evidence, and make objections to the introduction of offered improper evidence. N.M. Employment Sec. Dep't Reg. 518 (Oct. 1,

1974; repub. Nov. 5, 1987). The Board of Review may hear and decide a case before it either upon the evidence in the record made by the Appeals Tribunal, or upon the oral or written arguments presented to the court. N.M. Employment Sec. Dep't Reg. 528 (Oct. 1, 1974). In making its decision, the Board does not consider new evidence or information brought before it by the parties. Because this new evidence raised by NMESD and Sweetwater was improperly tendered to the Board, we will not consider it in our review of the whole record. Furthermore, we observe in passing that the cancelled checks dated on Mondays do not substantiate that Randolph's paycheck was disbursed on a Friday and was not received because Randolph had left work for her afternoon doctor's appointment.

 Finally, Randolph contends that she was subjected to unsuitable work conditions rising to the level of religious harassment. In *Davis v. New Mexico Employment Sec. Dep't*, 105 N.M. 55, 728 P.2d 465 (1986), we considered whether the employee entered employment with knowledge of the work conditions. Where conditions were known or revealed, the employee has been held to have accepted the conditions precluding a subsequent voluntary quit by employee with good cause. *Id.* at 56, 57, 728 P.2d at 466, 467. On review of the whole record, we conclude that Randolph, who previously worked for her employer in 1981, was aware of the religious beliefs of her employer and how those religious beliefs affected the work environment in 1981 and 1986.

It is uncontroverted that three of the four paychecks were not received on the designated payday. Further, one paycheck received on the designated payday could not be cashed promptly. This practice gives rise to good cause to quit. Therefore, no substantial evidence exists in the whole record to support disqualification of Randolph's receipt of unemployment benefits.

The order of the district court imposing a disqualification of unemployment benefits upon Randolph on the grounds that she voluntarily quit without good cause con-nected with her work is reversed. The cause is remanded for a computation and award of appropriate benefits.

IT IS SO ORDERED.

SOSA, C.J., and SCARBOROUGH and RANSOM, JJ., concur.

STOWERS, J., dissents with opinion.

STOWERS, Justice, dissenting.

I respectfully dissent from the majority opinion that Patricia D. Randolph (Randolph), petitioner-appellant, voluntarily quit her work for good cause; receipt of late paychecks. I would affirm the trial court's denial of Randolph's claim for unemployment compensation benefits.

In my view, the New Mexico Employment Security Department (NMESD) correctly found that Randolph quit work to accept another job with a former employer. The record indicates that Randolph was dissatisfied with her job and her employer. Randolph told her employer and co-workers she quit work to accept a job with a former employer. On the day Randolph quit, she told her employer she was meeting a former employer to display her portfolio. Randolph's claim that she quit due to late paychecks and religious harassment, arose *only* when she filed an unemployment benefits claim.

On review, we determine whether the trial court correctly found that the whole record contains substantial evidence to support the agency's decision. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 294, 681 P.2d 717, 720 (1984). The trial court must adopt administrative findings supported by substantial evidence. *New Mexico Human Services Dep't v. Garcia*, 94 N.M. 175, 177, 608 P.2d 151, 153 (1980) (citation omitted). Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Register v. Roberson Constr. Co., Inc.*, 106 N.M. 243, 245, 741 P.2d 1364, 1366 (1987). Although trial court evidentiary review favors the agency, unfavorable evidence may not be completely ignored. *Garcia*, 94 N.M. at 177, 608 P.2d at 153.

The trial court concluded that Randolph voluntarily quit work without good cause in connection with her work and denied her benefits claim pursuant to NMSA 1978, Section 51–1–7(A) (Repl.Pamp.1987). Good cause is established when vast compelling and necessitous circumstances exist such that there is no alternative to leaving gainful employment. *Ribera v. Employment Sec. Comm'n,* 92 N.M. 694, 695, 594 P.2d 742, 743 (1979). See also 81 C.J.S. *Social Security* § 226(a) (1977). Good cause is an objective measure of real, substantial and reasonable circumstances which would cause the average able and qualified worker to quit gainful employment. *Kistler v. Commw. Unemployment Compensation Bd.,* 52 Pa.Commw. 465, 467, 416 A.2d 594, 596 (1980). *See also* Annotation, *Unemployment Compensation: Harassment or Other Mistreatment by Employer or Supervisor as "Good Cause" Justifying Abandonment of Employment,* 76 A.L.R. 3d 1089, 1092–93 (1977); 76 Am.Jur.2d *Unemployment Compensation* § 59 (1975). Good cause also includes good faith; the desire to work and be self-supporting. Annotation, 76 A.L.R.3d at 1093; 76 Am.Jur. 2d *Unemployment Compensation* § 59 (1975).

The record indicates Randolph quit work to accept another job. This was not a compelling or necessitous cause which left Randolph no alternative to quitting her job. Thus, substantial evidence supports the trial court's finding that Randolph voluntarily quit her employment without good cause and its judgment should be affirmed.