785 P.2d 1031

**Carl A. OTERO, Petitioner–Appellant,**

v.

**NM EMPLOYMENT SECURITY DIVI-SION and Pacheco Trucking, Respondents–Appellees.**

No. 18560.

Supreme Court of New Mexico.

Jan. 22, 1990.

Chris Elias Garcia, Albuquerque, for petitioner-appellant.

D. Sandi Gilley, Albuquerque, for respondents-appellees.

## OPINION

RANSOM, Justice.

Carl Otero was fired after two weeks as a truck driver in the employ of Pacheco Trucking. He was fired because, with his driving record, the employer's insurance carrier refused to provide insurance coverage for Otero while driving the employer's vehicles.

Otero applied for unemployment compensation and the initial approval of his claim was appealed by the employer to the appeals tribunal of the New Mexico Employment Security Division. The hearing officer determined that Otero was disqualified for benefits because the discharge was for reasons constituting misconduct connected with work. The board of review affirmed the appeals tribunal and, on certiorari to the district court, the board was affirmed. Otero appeals, complaining of the finding that the discharge was for reasons constituting misconduct connected with work. We conclude the determination of the Employment Security Division was not supported by substantial evidence and reverse.

On appeal, the parties debate whether Otero was fired: (1) because of convictions for driving while intoxicated and with a revoked license prior to his employment with Pacheco Trucking; (2) because the employer's insurance carrier would not provide coverage for Otero; or (3) because Otero misrepresented his driving record when applying for the job.

■ Otero argues in his brief in chief that his driving record does not constitute disqualifying misconduct connected with his work because: (1) there was no employ-

ment relationship at the time of this conduct, and (2) the conduct was not violative of some code of behavior (i.e., duty) contracted between the employer and the employee. The Division argues that it was Otero's falsification of his employment application by misrepresenting his driving record that constituted disqualifying misconduct. In his reply brief, Otero asserts that, since the evidence adduced at the administrative hearing shows the sole reason considered by the employer for terminating Otero's employment to have been the refusal of the employer's insurance carrier to provide insurance, the only acts by Otero material to the employer's decision were his prior driving violations, not his failure to reveal those violations when applying for employment.

■ The Unemployment Compensation Law provides that an individual shall be disqualified for benefits "if it is determined by the [Division] that he has been discharged for misconduct connected with his work or employment." NMSA 1978, § 51-1-7(B) (Repl.Pamp.1987). To be disqualifying, misconduct must evince a willful or wanton disregard for the employer's interests and must significantly infringe upon legitimate employer expectations. *Rodman v. New Mexico Employment Sec. Dep't*, 107 N.M. 758, 761, 764 P.2d 1316, 1319 (1988) (citing *Mitchell v. Lovington Good Samaritan Center, Inc.*, 89 N.M. 575, 577, 555 P.2d 696, 698 (1976)). Accordingly, the Division argues that, because Otero was asked about driving violations both on the application and verbally, he had every reason to know that the requested information was vital to the employer for hiring and insurance coverage purposes. Yet, knowing that his driving record would reveal serious violations, Otero consciously elected to omit the requested pertinent information from the job application and deliberately indicated in answer to an oral inquiry that he had no known driving violations.

The authority relied upon by Otero includes *Weaver v. Wallace*, 565 S.W.2d 867, 870 (Tenn.1978) ("misconduct connected with work" is a breach of duty owed to the employer, as distinguished from society in general, and misdeeds predating the employment consequently cannot constitute misconduct connected with work in the subsequent employment); *Nelson v. Department of Employment Sec.*, 98 Wash.2d 370, 655 P.2d 242 (1982) (for off-duty misconduct to justify denial of unemployment compensation benefits, the employer must show the employee's misconduct (1) had some nexus with the employee's work, (2) resulted in some harm to the employer's interest, and (3) was in fact conduct which was (a) violative of some code of behavior contracted for between the employer and the employee and (b) done with the intent or knowledge that the employer's interest would suffer); *Giese v. Employment Div.*, 27 Or.App. 929, 557 P.2d 1354 (1976) (off-duty conduct was not a breach of a rule or regulation that had a reasonable relation to the employer's interest); and *Employment Sec. Comm'n v. Acosta*, 93 Ariz. 120, 378 P.2d 929 (1963) (claimants on strike were not employees).

The Division responds that, in *Weaver*, the claimant was fired for failure to meet suitable standards for employment due to his pre-existing records of arrests and convictions, and the employer neither expressly nor implicitly raised the issue of misrepresentation during the application stage of the employment relationship. Each of the other cases involved a claimant who was discharged for actions committed either while employed but off duty and off the employment premises, or while on strike.

The appeals tribunal and the district court both found that Otero's conduct, although off the job, was connected so closely with the employer's interests as to constitute disqualifying misconduct. Otero interprets these findings to refer to his driving violations several years before hire. The Division argues that these findings refer to misrepresentations made to the employer, and that the transcript of the administrative hearing establishes the hearing officer and the parties all focused only on the circumstances surrounding the claimant's conduct during the pre-hiring application stage of his employment and not on the actual violations.

■ The proposition appears well grounded in reason and precedent that a willful misrepresentation of a material fact made on an employment application provides grounds for terminating the employment for misconduct. *See Roundtree v. Board of Rev.*, 4 Ill.App.3d 695, 281 N.E.2d 360 (1972); *Miller Brewing Co. v. Department of Industry, Labor and Human Relations*, 103 Wis.2d 496, 308 N.W.2d 922 (Wis.App.1981). Clearly, misrepresentation of a driving record on an application for a position as a truck driver is sufficiently inimical to the business interests of the employer and, if the applicant subsequently is hired, is sufficiently connected with the employment to constitute grounds for termination for an act of misconduct.

However, we do not agree with the Division's characterization of the contents of the administrative hearing transcript. Moreover, upon review of the whole record we conclude the evidence does not support the Division's reading of the challenged finding to the effect that the misrepresentation was the cause for discharge. *See Trujillo v. Employment Sec. Dep't*, 105 N.M. 467, 734 P.2d 245 (Ct.App.1987) (whole record review applied). At oral argument, the Division argued that Otero would not have been hired but for his misrepresentations of qualifications of great significance to the employer. Thus, his discharge followed from those misrepresentations. The Division also argues that, from the prominence given the question of driving violations, it can be inferred that the misrepresentations were a tacit cause for the discharge.

The Division, in short, argues that cause and effect may be inferred as a fact. However, while a cause and effect relationship may exist between the acts of misrepresentation and the employer's decision to *hire* Otero,[1] the clear evidence of record precludes any reasonable inference that such a relationship exists between the acts of misrepresentation and the decision to *fire* Otero.

True, the hearing officer noted for the record that Otero left blank the question on his application form asking about known driving violations, and, in response to a question by the hearing officer, the employer stated that Otero also verbally indicated he had no known driving violations. However, neither the employer's testimony nor any other evidence in the record establishes that these misrepresentations had anything to do with the decision to terminate Otero's employment. Rather, the employer's testimony unequivocally establishes that, as claimed by Otero on appeal, the sole reason for terminating the employment was the employer's inability to obtain insurance coverage for Otero. When asked by the hearing officer whether any reason existed other than Otero's record for the decision to fire him, the employer responded:

> No, he was—he was always on time. He did the job for me. I just, you know, my hands are tied on this one. I just can't * * * keep him. I tried to fight to even keep him on, but I just can't do it. I just can't afford the insurance premium payments and try to stay in business.

The employer testified that he was forced to fire his own brother at the same time he fired Otero, also because the insurance company refused to provide coverage, and that he received a letter from the insurer requiring him to sign an exclusion endorsement verifying that neither individual was driving for him. Significantly, the employer also testified that *he would have retained Otero* if Otero could have rectified certain alleged errors on his driving record, and that he would consider Otero for rehire on the same conditions. *Nowhere* in the record does the employer intimate that his decision to fire Otero was due to Otero's misrepresentations of his driving record.

Given the testimony before it, the Division erred in finding that Otero was terminated because he had lied on his employment application. The facts instead sug-

---

**1.** Otero disputes this conclusion, arguing that the employer also hired his own brother despite knowledge of the latter's driving record. The employer's testimony is not conclusive on this point.

gest a situation quite close to the one considered by the Tennessee Supreme Court in *Weaver*. There, the court reversed a denial of benefits that had been based on the lower court's finding that the employee was discharged for lying on his application about his past convictions. The court concluded this finding was irreconcilable with the employer's explanation that the employee was discharged because, given its subsequent knowledge of his convictions, it no longer considered him to be a suitable employee.[2] Here too, the gravamen of the employer's explanation was that, with Otero's record of driving offenses, he was not suitable for employment as a truck driver because he could not be insured.

Given the foregoing considerations, the decision of the district court is reversed and the case is remanded for entry of judgment consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY, J., concur.

BACA, Justice (dissenting).

Being unable to agree with the majority opinion, I respectfully dissent. The majority holds that Otero was fired from his position not because of misrepresentations made on his employment application but because of the inability of Pacheco Trucking to obtain insurance because of his driving record. The majority holds that this did not constitute misconduct connected with his work. NMSA 1978, § 51–1–7(B) (Repl.Pamp.1987). In my view the reasons for firing Otero were his misrepresentations on the written application and his further misrepresentations made to oral inquiries concerning his driving record. The fact of Otero's misconduct, i.e. his errant driving, which occurred prior to his employment is not the reason for his discharge. The employment questionnaire is an extremely short document which barely elicits the name, addresses, and telephone numbers of the applicant and then highlights one question which is of paramount importance to one in the trucking business, to wit: What is your driving record? When this question was left blank, the person taking the application followed up with an oral inquiry about Otero's driving record; Otero misrepresented his record as being clean.

For off duty misconduct to justify denial of unemployment compensation benefits, the employer must show the employee's conduct: 1) had some nexus with the employee's work; 2) resulted in some harm to the employer's interests; and 3) was in fact conduct which was (a) violative of some code of behavior contracted for between the employer and the employee, and (b) done with the intent or knowledge that the employer's interests would suffer. *Nelson v. Dep't of Employment Security*, 98 Wash.2d 370, 655 P.2d 242 (1982). One can hardly imagine conduct that falls more closely within the perimeters outlined by *Nelson*. Nothing could be more critical to the owner and operator of a trucking enterprise than the safe driving record and the insurability of those persons driving for him. The fact that Pacheco would have kept Otero on and that he proved to be a good employee "always on time, did a good job" only serves to emphasize the importance of the information attempted to be elicited and misrepresented by Pacheco.

Otero was actually aware of his driving record and knew of its effects on his personal insurability. In his attempt to secure personal car insurance his driving record became a factor in its refusal.

To suggest he was let go because he was uninsurable is to ignore the fact that but

2. *Weaver* slightly differs from the present case in that the employer was the federal government and a federal statute provided that the reasons given by the government for the discharge of the employee were to be accepted as final and binding. 565 S.W.2d at 869 (construing 5 U.S.C. § 8506). Here, since the employer is a private individual, the Division properly engaged in a fact finding process to determine the reasons underlying the dismissal. Nonetheless, as discussed in the body of this opinion, no substantial evidence was presented from which the conclusion could be drawn that the employer fired Otero because of his misrepresentations on the employment application.

for his misrepresentations on the applications he never would have been hired and in a position to be terminated when this fact with all its economic repercussions came to light. Mr. Otero notes that with knowledge of Mr. Pacheco's brother's driving record he was hired and like Otero was only released after his insurability became a question. Mr. Otero, unlike a brother, had the true facts of his record been known would not have gotten in the door at this trucking company. One can advertise in the paper and unearth scores of truck drivers, but brothers and other relatives are always with us and may not serve as the basis for sound business decisions.

Mr. Otero having been dismissed because of misrepresentations on the application constituting misconduct on the job, I would affirm the district court.

WILSON, J., concurs.