845 P.2d 808

**Miriam KRAMER, Petitioner–Appellant,**

**v.**

**NEW MEXICO EMPLOYMENT SECURITY DIVISION, and New Mexico Department of Human Services, Respondents–Appellees.**

**No. 20570.**

Supreme Court of New Mexico.

Dec. 29, 1992.

David Benavides, Northern New Mexico Legal Services, Inc., Santa Fe, for petitioner-appellant.

Tom Udall, Atty. Gen., C. Reischman, Asst. Atty. Gen., Albuquerque, for respondent-appellee New Mexico Dept. of Labor.

Helen P. Nelson, Acting Gen. Counsel, Diane Garrity, Asst. Gen. Counsel, Santa Fe, for respondent-appellee New Mexico Dept. of Human Services.

## OPINION

FROST, Justice.

The Department of Labor, Employment Security Division (ESD), initially determined that Miriam Kramer (Kramer) was eligible to receive unemployment benefits after she voluntarily left her job with the New Mexico Human Services Department (HSD) for health reasons. ESD's Appeals Tribunal, however, reversed that initial award of benefits, finding that Kramer was disqualified from receiving unemployment compensation under NMSA 1978, Section 51–1–7(A) (Repl. Pamp.1991). ESD's Board of Review and then the District Court sustained the disqualification, and Kramer appeals. We reverse.

## FACTS

Kramer had a history of lower back problems, which predated her employment with HSD. Her duties at HSD consisted mainly of word processing in a sitting position. It is undisputed that her secretarial duties aggravated her medical condition. Her doctor indicated that she was physically able to work a full 40–hour week if her job would allow greater flexibility of movement and would not require her to sit at a computer station for long periods of time.

Her doctor stated, however, that prolonged sitting in one position would cause her back condition to deteriorate.

Kramer asked her bureau chief, Janet Escudero, to be assigned to a new position that would accommodate her physical condition. Escudero informed Kramer that no other positions were available and that her job duties could not be changed. Ordinarily an employee should speak with her immediate supervisor about such a request, but that day Kramer's immediate supervisor, Jack Ortega, was absent. Kramer submitted to Ortega her letter of resignation with a doctor's statement the day after speaking with Escudero.

## ISSUES

There are two issues on appeal: whether there was a causal connection between Kramer's duties at work and her physical condition, which constituted "good cause" to terminate her employment; and whether Kramer gave reasonable notice to HSD regarding her intent to resign. We conclude that there was a sufficient causal nexus and that Kramer gave sufficient notice.

### I. *Standard of Review*

Our review of this matter is identical to that of the District Court. *Padilla v. Real Estate Comm'n of the State of N.M.*, 106 N.M. 96, 97, 739 P.2d 965, 966 (1987). In determining whether the trial court erred in the first appeal, we independently review the whole record of the administrative hearing to determine whether the final administrative order is supported by substantial evidence and the applicable law. *Randolph v. New Mexico Employment Security Dep't.*, 108 N.M. 441, 443, 774 P.2d 435, 437 (1989).

### II. *Causation*

The record discloses that Kramer's physician established a causal relation between her job and the deterioration in the condition of her lower back. That evidence was undisputed. ESD argued, however, that as a matter of law a work-related aggravation of a medical condition that existed prior to employment does not satisfy the requirement of "good cause in connection with his employment" found in Section 51–1–7(A). Section 51–1–7(A), entitled "Disqualification for benefits," states:

An individual shall be disqualified for, and shall not be eligible to receive, benefits:

A. if it is determined by the division that he left his employment voluntarily *without good cause in connection with his employment* ....

NMSA 1978, § 51–1–7(A) (Repl.Pamp.1991) (emphasis added).

In other words, ESD's position is that aggravation or deterioration of an illness or injury that predates employment can never satisfy the "good cause" element in the statute even if the deterioration of the pre-existing condition is caused by performance of duties on the job. ESD claimed that our opinions in *LeMon v. Employment Security Commission*, 89 N.M. 549, 555 P.2d 372 (1976) and *Ribera v. Employment Security Commission*, 92 N.M. 694, 594 P.2d 742 (1979) mandate this conclusion. ESD has misread those opinions.

In *LeMon*, we established that there "must be a causal connection between the employment itself and the termination thereof to trigger the eligibility for benefits." *LeMon*, 89 N.M. at 551, 555 P.2d at 374. Indeed, the claimant in *LeMon* made "no claim that his illness was related in any way to any condition of his employment, relying instead on the alleged 'voluntariness' of his self-termination to support his claim for benefits." *Id.* We went on to say that if the claimant's

ill health were to affect his eligibility for unemployment compensation, it would have to be as a condition affecting the statutory element of good cause, rather than as affecting the voluntariness of his termination—i.e., if the illness which made termination advisable here were a result of or in some way causally related to the employment itself so as to be "good cause in connection with his employment," then LeMon might indeed be qualified for benefits ....

*Id.*

In *Ribera,* as here, there was no dispute that the claimant's work had aggravated

her pre-existing medical condition, but we concluded that there was " 'no evidence to indicate that the condition was caused directly by the work performed for this particular employer or was otherwise attributable to her employment.' " *See Ribera* 92 N.M. at 695, 594 P.2d at 743 (quoting the Commission's conclusion of law). The record in *Ribera* disclosed that the medical reports of the claimant's condition were inconclusive about whether her disability was job-related. *Id.* at 696, 594 P.2d at 744. Thus, we found it significant that there was no evidence which satisfied the element of good cause in connection with her employment. *Id.* The factor that distinguishes *Ribera* from this case, then, is that here there is uncontroverted medical testimony that the deterioration of Kramer's condition was caused by the performance of her duties at work.

So, while we concluded in both *LeMon* and *Ribera* that there was no evidence of a causal nexus between the claimants' medical conditions and their employment, neither *LeMon* nor *Ribera* foreclosed the possibility that aggravation or deterioration of a pre-existing illness or injury can constitute "good cause in connection with his employment" under Section 51–1–7(A). In *Ribera*, we were left to assume that the claimant's medical condition would have deteriorated notwithstanding her employment. In fact, we noted that the claimant suffered pain whether or not she worked. *See id.* Here, on the other hand, there was direct, uncontroverted medical evidence that the deterioration of Kramer's condition was work-related and that her condition improved after she left her job. Accordingly, substantial evidence supported overturning her disqualification for unemployment benefits.

### III. *Notice*

In support of their contention that Kramer gave inadequate notice of her intent to resign, ESD and HSD argued that Kramer never fully informed her supervisor, Ortega, about her medical condition. This ignores, however, the undisputed evidence that Kramer requested Ortega's supervisor, Escudero, to reassign her job

duties before she tendered her resignation. It is also undisputed that Escudero's response to Kramer's inquiry was unequivocal: there was no possibility of reassignment or change in job duties to accommodate her medical problems. Clearly, Kramer satisfied the legal requirement of reasonable notice.

Reasonable notice under the statute is a component of the "good faith" requirement that we have established as part of "good cause" under the statute. *See Molenda v. Thomsen,* 108 N.M. 380, 381, 772 P.2d 1303, 1304 (1989). In *Molenda,* we stated that good cause under Section 51–1–7(A) is an "objective measure of real, substantial and reasonable circumstances which would cause the average able and qualified worker to quit gainful employment." *Id.* We reasoned further that the element of good cause incorporated the concept of "good faith," which we defined in this context as a genuine desire to work and be self-supporting absent fraud. *Id.* "Good faith" in turn imposes a duty upon the employee to attempt to resolve his or her work-related problems with the employer before voluntarily quitting her job and receiving unemployment benefits. *See id.* at 382, 772 P.2d at 1305. The policy underlying this good-faith notice requirement is eminently reasonable: it allows the employer an opportunity to redress the problem that might lead to the employee's resignation and an improper award of unemployment benefits while trying to accommodate the employee's concerns about his or her health.

ESD and HSD argued that because Kramer failed to discuss her medical condition fully with Ortega, her immediate supervisor, she failed to give adequate notice of her problem. ESD went further and claimed that Kramer's resignation the day after speaking with Escudero indicated that she had already made up her mind to resign, which did not constitute giving HSD "reasonable notice." We believe, however, that Kramer's actions were reasonable under the circumstances. Because Ortega was absent, Kramer went to Ortega's supervisor and was notified that nothing could be done to redress the problems

718

with her back. In addition, there was no evidence in the record to support ESD's supposition that Kramer had fraudulent intentions in bypassing Ortega or that she had already made up her mind to resign before she approached Escudero. Accordingly, we conclude that Kramer's discussion with Escudero was sufficient to meet the good faith, reasonable notice requirement as a matter of law.

## CONCLUSION

 Deterioration of an illness or injury that predates employment may constitute good cause to voluntarily terminate employment under Section 51-1-7(A) as long as the aggravating circumstances are causally connected with the employment. *LeMon,* 89 N.M. at 551, 555 P.2d at 374. In addition, notice to terminate employment is adequate and reasonable as long as all opportunities to rectify the problems precipitating resignation have been exhausted or deemed futile. *See Molenda,* 108 N.M. at 382, 772 P.2d at 1305. Accordingly, we reverse the District Court's judgment and remand with instructions to reinstate the award of unemployment compensation.

IT IS SO ORDERED.

RANSOM, C.J., and MONTGOMERY, J., concur.